*New-London,*
July, 1850.

Edwards & ux.
*v.*
Stonington
Cemetery
Association.

EDWARDS and wife *against* STONINGTON CEMETERY
ASSOCIATION :

### IN ERROR.

Where sundry individuals signed articles of association, which, after counting
upon the fact that public necessity and convenience require, that a specified
burying-ground, heretofore used as a public burying-ground, should be en-
larged for public use, proceeded to say, that " the subscribers, pursuant to the
statute in such case provided, do hereby, for that purpose, agree to associate
together, as a body politic and corporate;" and it was objected, that this asso-
ciation was formed for the purpose of *enlarging* a burying-ground already
established, and not for the purpose of *procuring* and *establishing* one, and
was, therefore, unauthorized by the statute referred to; it was held, that this
objection was untenable, as in both cases, the purpose was, to procure land
for a cemetery, and establish it as such.

Where the members of the association had a right of burial in the ground sought
to be enlarged, though the fee was in others who were not members ; it was
held, that such members had an interest in the subject matter, sufficient to
qualify them to petition for an enlargement.

The effect of sustaining this proceeding would not be to deprive any of those
who already had the right of burial in the old ground, of the future enjoyment
of that right, in the same manner as before.

Whether the right of burial in the old ground, be in the public, or in particular
individuals, the part added will be public, subject to the regulations of the as-
sociation; consequently, the taking of land for the enlargement, will not be
the taking of private property for *private use.*

As to the quantity of land taken.

THIS was an application, made to the county court, by the
president and directors of the *Stonington Cemetery Associa-
tion*, stating, that they were incorporated and organized un-
der the statute ; that the *Phelps* burying-ground, near the
borough of *Stonington*, and near the members of the associa-
tion, contained, by the original reservation, and purchase, but
one acre, which was now almost entirely occupied by the
graves, mostly of the friends and relatives of the members of
the association ; that public necessity and convenience re-
quired a considerable enlargement of said burying-ground ;
that the petitioners wished to enlarge it, by adding thereto
three acres of adjoining ground ; that they had tried, but
could not agree with the owners of the land ; and praying
for the appointment of a committee to enquire into the pub-
lic convenience and necessity of such enlargement, to desig-
nate its boundaries, assess damages, &c.   The petition was
brought in *August*, 1849.

The defendants, on the first day of the session of the court, filed their motion to dismiss the petition, assigning the following reasons:

*New-London,* July, 1850.

Edwards & ux
*v.*
Stonington Cemetery Association.

1. That the petitioners are not a body politic and corporate, established by authority of this state, or of any statute or resolution of the government thereof.

2. That the petitioners are not, and never were, a community or association, duly formed according to the provisions of the 190th section of the act concerning communities and corporations.

3. That the petitioners have never procured and established, nor are they the proprietors of, any burying-ground or place of sepulture.

4. That the petition was brought solely for the purpose of procuring, under the authority of the court, an addition to be made to the *Phelps* burying-ground ; of which the petitioners are not the proprietors, and have not now, and never had, any interest therein.

5. That the *Phelps* burying ground is not, and never was, a public burying-ground, but is a private burying-ground, and all right, title and interest therein is vested in a few individuals, for their private use.

6. That all additions made to such burying-ground, will be land taken for private use, and not for public use, contrary to the constitution and laws of this state and of the *United States.*

After a hearing upon the allegations in this motion, the court found the following facts.

On the 7th day of *May,* 1787, *William Chesebrough* conveyed the farm then owned by him, including a place used for a burying-ground, to *Charles Phelps,* by a deed of warranty. On the same day, said *Phelps* conveyed, by a release deed, one acre of the land embraced in said farm, to said *Chesebrough,* for the purpose of a burying-ground. At this time, the acre in question had been used as a burying-ground for the *Chesebrough* family. Others, however, had been buried there, but to what extent, and under what circumstances, did not appear. On the 23d day of *October,* 1792, *William Chesebrough* reconveyed said acre to said *Charles Phelps* in fee, by a deed of warranty. On the 8th of *May,* 1809, said farm, including said acre, was distributed to *Joseph*

New-London,
July, 1820.

Edwards & ux.
v.
Stonington
Cemetery
Association.

*D. Phelps*, one of the children and heirs of said *Charles Phelps*, then deceased. On the 25th day of *February*, 1817, *Hannah Phelps*, administratrix of the estate of said *Joseph D. Phelps*, then deceased, insolvent, by order of the court of probate, ordering and directing her to sell at public sale, all the real estate of the deceased, sold at auction, and conveyed said farm to *William Lord*, excepting said acre of land, which exception is in the following words, *viz.* " Except one acre of land reserved where the burying-ground is, which is to be enclosed, with privilege to pass and repass to and from the same." That exception was made at the request of *Ephraim Williams*, and two or three others, who had friends buried there, and who agreed to pay Mrs. *Phelps* a certain sum, as an inducement. The proportion of *Ephraim Williams*, whose mother was a *Phelps*, was paid : whether the remainder was paid, did not appear.

On the 28th of *August*, 1823, *William Lord* conveyed the farm in question to *Charles H. Phelps*, who was one of the children and heirs of said *Joseph D. Phelps*, deceased, by quit-claim deed, describing it as the farm he bought of said *Hannah Phelps*.

About ten or twelve years since, said *Charles H.* made a fence around said acre, or nearly all of said acre, having requested said *Ephraim Williams* to assist him ; who refused, until it could be done, as he thought, in a proper manner.

About three years since, said farm was distributed to *Martha E. Phelps*, (now wife of *Eugene Edwards*,) one of the children and heirs of said *Charles H. Phelps*, then deceased.

The practice has been, to bury in that ground persons who previously had relatives lying there, without asking any leave ; but since the year 1823, when it was intended to bury strangers there, leave has usually been asked of the *Phelps* family, or of some one who had friends buried there ; and leave never was refused. What the practice was before that time, did not appear.

The ground is now nearly full, containing more than 500 graves, of which less than 20 are of persons bearing the name of *Phelps*, though many of them were relatives of the *Phelps* family. The place has, since the conveyance in 1792, been called the *Phelps* burying-ground, and has been claimed by the *Phelps* family, as part of said farm.

All the members of this cemetery association, and many other families at *Stonington*, have friends buried in said ground.

New-London, July, 1850.

Edwards & ux.
*v.*
Stonington Cemetery Association.

None of the descendants of *Joseph D. Phelps*, are members of this association.

The corporation known as the *Stonington Cemetery Association*, and as such bringing this petition, have no interest or right in said burying-ground, other than as above set forth.

The public have had the benefit of said burying-ground, and have become interested in it, in the manner herein stated, and not otherwise.

The petitioners have never been, in any way, organized, except under and by virtue of the following articles :

" Whereas, public necessity and convenience require, that the *Phelps* burying-ground, so called, situate in the town of *Stonington*, and which has been heretofore used as a public burying-ground, should be enlarged for the use aforesaid, we, the subscribers, inhabitants of said town of *Stonington*, pursuant to the provisions of the statute, in such case made and provided, do hereby, for that purpose, agree to associate together, as a body politic and corporate, under the following articles of association, respectively, taking the number of shares to our names annexed.

This association shall be called the STONINGTON CEMETERY ASSOCIATION; the stock of which shall be divided into sixty-four shares. But this subscription shall be binding, and the corporation may be duly organized, whenever a majority of said number of shares, shall have been subscribed for : the remaining shares not subscribed for and taken, at the time of such organization, being to be thereafter held and disposed of, as said association shall order and direct.

The first meeting of the association shall be called and held in the borough of *Stonington*, pursuant to a public notice, signed by three of the first five subscribers to these articles, appointing the time and place of such meeting, and posted upon the public sign-post in said borough, at least five days before such meeting ; and future meetings may be warned and held, upon the like notice, until said corporation shall, by their by-laws, otherwise order and direct; after which said meetings shall be warned and held, as said by-laws shall require ; each share-holder being entitled, at such meeting of

New-London,
July, 1850.

Edwards & ux.
v.
Stonington
Cemetery
Association.

said corporation, to a number of votes equal to the number of shares held by him or her.

The officers of said association shall be a president, three directors, a treasurer and clerk, who shall be chosen at the first meeting of said corporation, and shall hold their offices respectively until others shall be appointed, and shall accept such appointments, in their place and stead ; elections for such officers being to be from time to time held, as the by-laws of the association shall require.

The president and directors of said association may, by purchase or otherwise, procure and obtain such lands as may be required for said cemetery ; and may enclose and improve the said ground, as they may think proper, subject to the order of the association.   Such part of said ground so procured as said association shall direct, may be received and appropriated for a place for public use or burial ; the residue of said lands being to be divided, in such manner as to furnish suitable lots for the use of families, to be designated by suitable bounds or marks ; which lots may be, by the president and directors, sold, for the use of individuals or families, to be conveyed in such manner, and upon such terms, as the by-laws of the association may require.   The president and directors may, from time to time, make such assessments upon the shareholders, as may be found necessary for the use of said corporation ; the amount to which said share-holders shall be liable to be assessed not exceeding, in the whole, thirty dollars *per* share ; and in case the amount so assessed and received from the share-holders, together with the sums which shall be received upon the sale of the lots, shall not be sufficient to meet the payments which shall be required for and on account of said corporation, the president and directors may borrow such amount as may be required, upon the credit of said association, to be repaid from the assessments upon the shares, and the sales of lots aforesaid.   Every person who shall be the owner of a lot as aforesaid, though not a member of said corporation, shall be entitled to attend and take part in the deliberations of said corporation, but no person shall be allowed to vote at any such meeting, except share-holders only.

The assessment paid by any share-holder upon his or her shares, shall apply towards the price of any lots by him or her

purchased, and all moneys received from others, on the sale of lots, not required for the use of said corporation, shall be divided to and among the share-holders, until the amount so divided, and price of the lots by him or her purchased on account of his or her shares, shall equal the amount of the shares held by such share-holders. After the original subscription for shares shall have been repaid to the share-holders, all money received upon the sales of lots, shall be applied to meet the necessary expenses of said corporation, and to the improvement, and (if so required) to the extension of said cemetery. *Stonington, July* 27th, 1849." Signed, "*Ephraim Williams*, four shares," and thirteen other persons, some for the same, and others for a less number of shares; the whole number of shares subscribed for being thirty-five.

*New-London,* July, 1850.

Edwards & ux. *v.* Stonington Cemetery Association.

The court thereupon overruled the motion of the defendants, and granted the prayer of the petitioners, and appointed a committee to examine the premises described in the petition, and to determine upon the propriety and the public necessity and convenience of the enlargement prayed for, and upon the quantity, boundaries, damages and value of the land, which they should deem proper for the purpose contemplated. This committee, having been duly sworn, and having caused reasonable notice of the time and place of their meeting to be served upon the parties, repaired to the premises in the town of *Stonington*, and after a personal examination thereof, and a full hearing of the parties, with the evidence exhibited by them, they decided, that propriety, public convenience and necessity required, that said cemetery should be enlarged; and that such enlargement should be made *Westerly* and *Northerly* from the present limits of said cemetery; the nature of the ground adjacent thereto forbidding any enlargement in any other direction. The committee further reported, that from the evidence adduced before them, the original burial-ground embraced one acre of land, but the walls, which were erected around it, did not inclose quite an acre of land. And they further found, that public convenience and necessity required an addition of three acres of land, bounded and described as follows, including the one acre intended to be embraced within the limits of the old burial-ground, *viz.*, beginning at the *South-East* corner of the old burial-ground; thence running with the wall, by land of

New-London,
July, 1850.
———
Edwards & ux.
*v.*
Stonington
Cemetery
Association.

*Calvin G. Williams, North* 85° *West*, 26½ rods, to the highway ; thence by said highway, *North* 6¼° *East*, 24 rods, 21 links, to a stake and stones by the wall ; thence *South* 82¾° *East*, 26½ rods, to a stake and stones by the wall ; thence by the wall, *South* 6° *West*, 23 rods, 17 links, to the place of beginning ; the whole tract, inclusive of the old burial-ground, containing four acres of land.

The committee further reported, that they assessed the value of the land so added to the limits of said cemetery, at the sum of two hundred dollars *per* acre, being in the whole amount, the sum of six hundred dollars, which sum they awarded, as damages, to the defendants.

The defendants remonstrated against the acceptance of this report, assigning the same reasons as those previously assigned on the motion to dismiss the petition. The court found the facts stated in said report to be true, to the extent specified in the former finding of the court on said motion ; and thereupon accepted said report, and ordered and decreed, that the *Phelps* burying-ground be enlarged, by adding thereto, adjoining the same, *Westerly* and *Northerly*, three acres of land, bounded, &c., containing, including one acre in said old burying-ground, four acres. And the court further ordered and decreed, that said three acres of land adjoining said old burying-ground, on the payment or deposit of the assessment ordered, be, and the same was set apart and established as an addition to and enlargement of said old burying-ground or place of sepulture. The court then ordered and decreed, that the petitioners pay to the defendants, or deposit with the treasurer of the county of *New-London*, for their use, the sum of six hundred dollars, that being the sum assessed by said committee as damages, and the value of the land so added to said old burying-ground, within thirty days from the 6th day of *December*, 1849, and that execution issue for the same in favour of the defendants against the petitioners.

On motion in error, by the defendants, the record of the proceedings and final decree in this case, was transmitted to the superior court, by which it was adjudged, that in such record there was nothing erroneous. The original defendants, (now plaintiffs in error,) then removed the cause, by motion in error, to this court.

*T. C. Perkins,* for the plaintiffs in error, contended, 1. That the defendants had not organized their association pursuant to the 190th section of the act concerning communities and corporations. *Stat.* 183. Under that section, associations could only be formed to *procure* and *establish* a place of sepulture ; it was to be done *de novo;* and they could only take land *by contract.* The object of the act of 1849, approved, *June* 21st of that year, was merely to give these associations power to enlarge, by compulsory process, the limits of their grounds. This act did not authorize the formation of associations for any other than the specific purpose named in said 190th section. But this association is formed, not to procure or establish a place of sepulture, but merely to *enlarge* the limits of one. This distinction is essential. Statutes authorizing the taking of land, by compulsory process, have a *strict* construction. *Sharp* v. *Speir,* 4 *Hill,* 76. 81–84. *Sprague* v. *Birdsall,* 2 *Cowen,* 419, 420. *Sharp* v. *Johnson,* 4 *Hill,* 92. The legislature never intended to establish a burying-ground, originally, by compulsory process. They intended this should be done only by *contract.* This appears from the 190th section. Where it was so established, (and it could be done in no other way,) by an association formed under that section, then such a ground, and no other, under the act of 1849, could be enlarged by compulsory process. These acts are *in pari materia,* and to be construed together, as if parts of the same act.

2. That the petitioners cannot sustain this process, because they have *no interest* in the ground proposed to be enlarged. *Gaston* v. *Plum,* 14 *Conn. R.* 344. 347. That this association has no such interest, appears from the finding of the county court. Even if some of the individual corporators have the *right of burial* there, it gives them no interest there. See *Kinne's Law Compendium* for 1850, *p.* 64. Still less would it give such interest to the corporation of which they are members. The statute of 1849 could only have contemplated the case where the petitioners should be the *legal proprietors* of the ground sought to be enlarged. Otherwise, these petitioners might bring a similar process against the owners of land adjoining any other burying-ground in the state ; or associate to enlarge any other ground ; or any other persons might associate to enlarge this. The legislature never de-

*New-London, July, 1850.*

―――――

*Edwards & ux. v. Stonington Cemetery Association.*

*New-London,*
July, 1850.

Edwards & ux.
*v.*
Stonington
Cemetery
Association.

signed, that the title to the old ground should be in one party, and the addition in another.

Great injustice would result, if the claim of the petitioners is allowed. A party consents that his relatives may bury on his farm—it leads to the compulsory establishment of a large public burying-ground near his house. The effect here will be to take this family-ground from the *Phelps* family, and give it to the public. None of the descendants of old Mr. *Phelps* are members of this association ; and if they were, they could at any time sell out.

3. That this process cannot be sustained, because this is not a *public* burying-ground ; and none but such could have been contemplated by the act. If an association can in any case be formed, merely to " enlarge," certainly not to enlarge a *private* ground. That this is in fact a private ground, appears by the finding of the county court.

4. That this being a private ground, the lands are taken for private use, which is unconstitutional. Only such parts are reserved for public use, as the association *may* direct—perhaps none. See *Articles of Association.*

5. That part of the land is taken without payment : in other words, more land has been taken than is to be paid for. Although this is not specified in the original remonstrance to the county court, yet as it appears on the face of the proceedings, and was assigned as a cause of error in the superior court, it is error here.

*Strong* and *Pomeroy*, for the defendants in error, contended, 1. That the act of 1849 was not confined to the enlargement of cemeteries created under the act of 1841. *Sess. Laws, p.* 63. In the first place, the language of the act of 1849, does not require such a construction. It only provides how the community that is thus to enlarge, shall be organized, as is provided in the act of 1841. Secondly, the statute of 1841, having existed but for a few years, and but few associations having been formed under it, no such provision is now required for the enlargement of *their* cemeteries. Thirdly, the ownership of ancient cemeteries, which require to be enlarged, in many instances, cannot be ascertained ; many of them having been originally given or dedicated for public use, without deed or conveyance to any trustees or corporation ;

and many of them, originally designed for family burying-grounds, having been thrown open to public use. In no way could the title to such grounds become vested in a corporation formed under the act of 1841.

New-London,
July, 1850.

Edwards & ux.
v.
Stonington
Cemetery
Association.

2. That this is not taking private property for private use; but for public use, with full remuneration in damages. In the first place, there is as great a necessity for thus taking the land of individuals, as in case of highways, rail-roads, canals, school-houses, &c. Secondly, according to uniform usage, cemeteries have been provided by the public.

3. That it does not appear, that any more land has been taken, than has been paid for, by the assessment of damages; and if any such claim could have been made, on the coming in of the report to the county court, not being made then, it cannot be made now. The only reasons assigned against the report of the committee, were those filed against their appointment.

HINMAN, J. The first question presented upon the record, is, whether the *Stonington Cemetery Association*, the party defendant in this motion in error, and the original party plaintiff in the county court, was and is a legal corporation, capable of bringing the original petition to the county court.

The 190th section of the *Revised Statutes, p.* 183. authorizes " any individuals, in any town in this state, to associate for the purpose of procuring and establishing a burying-ground or place of sepulture; and being so associated, they, on complying with the provisions of said section, become a body politic and corporate.

The members of this association, on the 27th of *July,* 1849, for the purpose of organizing, as a corporation, under this section, signed certain articles of association, a copy of which they lodged with the secretary of state, and caused to be recorded in the records of the town of *Stonington,* where the burying-ground is situated, pursuant to the requirements of this section of the statute. No question is made as to the proceedings being regular in point of form; but the articles of association, after counting upon the fact that public necessity and convenience require, that the *Phelps burying-ground*

New-London,
July, 1850.

Edwards & ux.
v.
Stonington
Cemetery
Association.

should be enlarged for public use, go on to say, that they, " pursuant to the statute in such case made and provided, do hereby, *for that purpose*, agree to associate together, as a body politic and corporate," &c.

The plaintiffs in error deny, that this is an association pursuant to this section of the statute, on the ground that it does not profess to associate *for the purpose of procuring and establishing a burying-ground,* but for the purpose of *enlarging one already established.* which, it is insisted, is for an object entirely different. We think the construction we are asked to give to this statute, too narrow. Persons are authorized to associate for the purpose of procuring and establishing a place of sepulture. This can mean nothing else than that they are authorized to associate, in order to procure land for that purpose, and establishing it as such. This may as well be done, by enlarging an old established burying-ground, as by purchasing land for the purpose of establishing one, in a place entirely separate from any former place of the sort. In both cases, it is procuring land for a place of sepulture, and establishing it as such.

We are referred, on this question, to cases going to show, that statutes authorizing the taking of land, by compulsory process, should be construed strictly. No doubt that is a general principle; but we do not see its applicability to this question. In the mere organization of a corporation for the purpose of establishing a burying-ground, there does not seem to be anything that should require more care, than if it was organized for any other purpose. When the corporation is once organized, and they attempt to take private property, without the consent of the owner, it is right to hold them, and all others in like circumstances, to a clear and plain exercise of the power expressly granted.

The cases to which we are referred would then apply; and they may well enough apply to other parts of this case; but have no particular force on the question of the mere organization of the corporation.

If, then, the original petitioners were properly organized as a corporation, for the purpose of procuring and establishing a burying-ground, were they authorized to institute this proceeding?

By a statute of 1849 (acts of that year, *p.* 8.) it is provided,

that " whenever any community or association, duly formed, according to the provisions of the 190th section of the act concerning communities and corporations, wish to enlarge the limits of a burying-ground, or place of sepulture, and cannot agree with the owner or owners of the land proposed to be taken for such purpose, they may apply, by petition, to to the county court."

*New-London,*
July, 1850.

*Edwards & ux.*
*v.*
Stonington
Cemetery
Association.

The original petition was brought and prosecuted under this statute ; and no question is made but that the petitioners, being duly incorporated, the proceeding itself was regular, and is authorized by the strict letter of this law. But it is made a question, whether they can proceed, in this application, to enlarge a burying-ground, in which, it is claimed, they have no interest.

It is not, in our opinion, very material to enquire, in whom, at the present time, is the fee of the one acre of land, known as the *Phelps burying-ground.* It appears to have been used as a private or public place of sepulture, for a period of more than sixty years ; the ground being now nearly covered with graves ; that for the last twenty-five years and more, the practice has been, to bury those persons who had relatives lying there, without asking leave ; but that since the year 1823, when it was intended to bury strangers in that ground, leave has usually been asked of the *Phelps* family, or of some one who had friends buried there ; that leave to bury there has never been refused to any one ; and that all the members of this association, and many other inhabitants of *Stonington*, have friends buried in that ground. Now, under these circumstances, whether Mrs. *Edwards*, one of the plaintiffs in error, as a grand-daughter and one of the heirs, of *Joseph D. Phelps*, who died previous to 1817, more than thirty years since, has, in common with the other heirs of her grand-father, an interest in the fee of this burying-ground, does not seem to be material. It is very probable, that she has such an interest. The ground was distributed, with other lands, to *Joseph D. Phelps*, in 1809 : and it does not appear, that he and his heirs ever lost their title to it, in any way, unless the use of it as a burying-ground, in the manner above stated, has deprived them of it. Be that as it may, we think the right of burial, which the members of this association, and all others having friends buried in that ground,

*New-London,*
July, 1850.
—————————
Edwards & ux.
*v*
Stonington
Cemetery
Association.

have exercised, for so long a period, is conclusive evidence of their rights to bury there ; and that the right of burial may exist, either in the public or in private persons, and the fee of the soil be in others, we presume is too clear for argument.

It appears, then, that all the members of this association, have an interest in the *Phelps* burying ground, having a right to bury their dead in that gronnd. This, we are aware, does not amount to a strict technical interest in the corporation, as such, in the ground in question ; and yet it is impossible to separate the interest of the individual members, in such a corporation as this, from the interest of the corporation itself.

The only object of the corporation was, to procure for its members and the public a place of burial ; and it would not seem to be any departure from principle, to treat it as the trustee of its members for this purpose. The corporation of a city or village, it has been held, may apply for an injunction against a nuisance to the inhabitants, erected upon its public streets or squares ; not because the corporation, as such, has any title to the property itself—it obviously has no such title—nor is it because its citizens, strictly speaking, have any title to the property ; for they have none that is not common to the whole public ; yet the chancellor, in the case of the trustees of *Watertown* v. *Cowen*, 4 *Paige*, 510, found no difficulty in considering the corporation as the proper representative of the equitable rights of the inhabitants of the village to the use of the public square, so as to protect those rights against the erection of a nuisance. See also the *Mayor* &c. of *London* v. *Bolt*, 5 *Ves.* 129.

But however this may be, when we take into consideration the very comprehensive language of the statute, under which the petition was originally brought, we think it no strained construction to say, that the petitioners have all the interest in the subject matter, that the legislature intended to require.

It was suggested in argument, that the effect of this proceeding, if sustained, would be to deprive the owner of the *Phelps* burying-ground of their rights there. This suggestion is wholly unfounded. That ground has not been taken, nor is it in any way affected, by this proceeding. The heirs

of *Joseph D. Phelps* still remain the owners of the fee in the ground, if they were so, when the petition was brought ; and they, in common with the members of this association, and all others who have acquired the right to bury there, will continue to enjoy their rights in the old ground, in the same manner as before.

*New London,*
July, 1850.

Edwards & ux.
*v.*
Stonington
Cemetery
Association.

Again, it is made a question, whether the *Phelps* burying-ground is not private property, belonging solely to the heirs of *Joseph D. Phelps* ; and, if so, it is claimed, that this application to enlarge it, cannot be sustained.

It is not necessary to decide, whether an association, under this late statute, could be sustained, for the purpose of enlarging a private burying-ground, in which neither the association itself nor any of its members, had any interest.

It seems difficult to say, that it could do so, without holding that it could apply, not merely to enlarge a burying-ground, but also to establish one entirely new, and disconnected with any other. It will no doubt be worthy of consideration, when such a question arises, whether it can be done. But it has already been suggested, that the right of burial in the old ground, being in the association or its members, will give the association a sufficient interest to enable them to enlarge it ; and whether this right of burial is in the whole public, or is confined to particular individuals, as in this case, to such persons as have friends buried in the old ground, can make no difference. If the right in the old ground is not public, in every sense of the term, it will not affect the public right in regard to that part of the ground which is added to it by this enlargement. The part added will be public, subject to such regulations and restrictions as the by-laws of the association may make ; and that is enough to answer the material part of this claim, *viz.* its being subject to the objection of taking private property for private use only.

It is claimed, that it appears on the face of the proceeding, that more than three acres of land have actually been taken ; and consequently, that the excess has been taken, without any compensation being made therefor.

This was not assigned for error in the superior court ; but perhaps that is not a sufficient answer to the claim, if the fact appeared upon the face of the record. But it does not so

New-London,
July, 1850.

Edwards & ux.
v.
Stonington
Cemetery
Association.

appear.   The most that can be claimed, is, that there may perhaps be some room to doubt, whether all the land which is professedly taken, three acres, will cover all the land, which, with the old burying-ground, goes to make up the four acres, now included in the survey of the whole ground, including the enlargement.

The committee proceeded to take and assess the damage for taking three acres only; and they treat the old burying-ground as containing one acre.   By the deeds, the last of which was in *October*, 1792, from *William Chesebrough* to *Chas. Phelps*, Esq., the father of said *Joseph D. Phelps*, it is called " one acre," and is described as such.

Hence the committee say, that the original ground included one acre of land; but the walls which were erected around it, do not make quite an acre.   These walls, it appears, are a modern erection.   They were erected by *Chas. H. Phelps*, father of one of the plaintiffs, and under whom they both claim.   They were erected ten or twelve years since.   In the first deed of this ground from *Chas. Phelps* to *William Chesebrough*, it is said to be conveyed " for the purpose and intent of a burying-place, and not to be improved in any other way;" and is described as " one acre of land on the farm I have this day bought of said *Chesebrough*, where his honoured father and mother were buried, to be laid out square, in the most convenient manner for a burying-place."   Under this deed, the lines of the one acre do not appear to have ever been actually surveyed, until the committee did it, for the purpose of surveying the addition to it.   The only attempt to fix the lines, was the erection of the fence, some ten or twelve years since, by the proprietors of the *Phelps* farm.   Doubtless they intended to include the one acre originally deeded; but the fence did not include it all.   Under these circumstances, it is impossible to say, that more land has been taken than three acres.   The old ground contained one acre; there are but four in the whole ground, as enlarged.   It is not pretended that the lines have been so run as to leave out any part of the old ground.   We do not see, therefore, that any more land has been taken than the three acres for which the committee have assessed damages.

Upon the whole case, then, we are not satisfied there was

any error in the judgment of the superior court; and we or-
der judgment to be entered for the defendant in error.

*New-London,*
July, 1850.

Edwards & ux.
*v.*
Stonington
Cemetery
Association.

In this opinion the other Judges concurred.

Judgment affirmed.