THE TOWN OF WEST HARTFORD *vs.* THE BOARD OF WATER
COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, May Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

By an amendment to the charter of the city of Hartford, the defendant
board was authorized, in 1865, to take the city's water supply from cer-
tain streams in the plaintiff town, on condition that it would furnish
the water to the inhabitants of such town who lived " within a reason-
able distance from the line of main pipes," upon the same terms that
it furnished the water to its own citizens.   Thereafter the board laid
connecting pipes in a number of the side streets of the plaintiff town,
extending from three hundred feet to three quarters of a mile from its
main line of pipes, and for nearly thirty years supplied water to the
residents of such side streets.   In an amicable statutory suit brought
by the selectmen of the town of West Hartford on behalf of its inhabi-
tants and property owners, to determine their rights and the powers
and duties of the board, it was *held*:—

1. That this long continued usage had given a practical construction to the
clause above quoted, which defined the duty of the defendant board in
the premises, and that the extent of such duty could not be limited or
circumscribed by a subsequent vote of the board to furnish no more
water to residents of the plaintiff town, except such as lived on the
highway in which the main line of pipe was laid.
2. That the question whether an applicant for water which said board
might refuse to furnish, lived within a "reasonable distance" of the
main line of pipes, was one for the determination of the courts.
3. That the defendant held the property now in question, not as a private
corporation but as a public municipal corporation.

[Argued May 6th—decided December 1st, 1896.]

AMICABLE suit to determine the legal duty of the respon-
dent in respect to furnishing the inhabitants of the town of
West Hartford with water; brought to the Superior Court
in Hartford County and reserved by that court, *Robinson, J.,*
upon an agreed statement of facts, for the consideration and
advice of this court.

The agreed statement of facts is as follows: The applica-
tion of Everett T. Stanley, Wilbur E. Goodwin and Morgan
Goodwin, selectmen of the town of West Hartford, for the
said town and the inhabitants and property owners therein,

of the one part, and of the Board of Water Commissioners of the city of Hartford, a corporation duly chartered by the General Assembly of this State, of the other part, respectfully represents that there is a question of difference between them, which might be the subject of a civil action, and that they have agreed upon the facts upon which such controversy depends, which are as follows :—

1. The Board of Water Commissioners of the city of Hartford is a corporation duly incorporated by the General Assembly of this State in 1853, for the purpose of supplying the city of Hartford with water from the Connecticut River, at some point within or near said city.

2. At the session of the General Assembly, A. D. 1865, upon the petition of the said Board of Water Commissioners, the following Special Act was passed : Whereas doubts have arisen whether the charter of said city confers upon the Board of Water Commissioners therein constituted, the power to take and convey for and in behalf of said city a supply of water from any other source than the Connecticut River; therefore, *Resolved by this Assembly :* Section 1. That said charter shall be construed in the same manner, and said Board of Water Commissioners shall have the same powers as if the stream in West Hartford, called " Trout Brook," or any other stream or water source within the towns of West Hartford or Hartford, had been expressly named therein, and any land or water right, title, privilege, or franchise, which may be required, taken, or impaired, for the purpose of supplying said city or said towns with water under said charter, shall be compensated for, and the damages ascertained, liquidated and paid in the manner as is provided in the twenty-fourth section of said charter. Sec. 2. If said city shall approve this resolution in the manner hereinafter provided, and said Board of Water Commissioners shall introduce water into said city from said Trout Brook, or other water source, as aforesaid, it shall be lawful, and it shall be the duty of said Board of Water Commissioners, to supply said water to the inhabitants of the aforesaid towns living withing a reasonable distance from the line of main pipes, at the same rate of

water rents and upon the same terms and conditions that the inhabitants of said city are or may be from time to time supplied, and the said water rents shall constitute a lien upon lots, houses and tenements within said towns, and be collected and enforced in the same manner that water rents are, or may be, collected and enforced in said city of Hartford. Sec. 3. Said Board of Water Commissioners shall not be authorized under this resolution to take and convey water from said Trout Brook or other water source as aforesaid, within the towns of West Hartford or Hartford, until this resolution shall be approved in the manner herein prescribed. A special meeting of said city shall be called by the mayor of said city, in the manner provided by the ordinances of said city for calling special meetings thereof, for the purpose of approving or disapproving this resolution. The vote at said meeting shall be by ballot, and shall be cast by the freemen of said city in their respective wards. The ballot-boxes shall be opened at seven o'clock in the forenoon, and close at five o'clock in the afternoon of the day of said meeting. Upon each ballot shall be written or printed the words " Trout Brook," or the words " Connecticut River." If three fifths of the ballots cast at said meeting shall have upon them the words " Trout Brook," then this resolution shall be deemed approved. Approved, July 21, 1865. Said resolution was subsequently duly approved by the freemen of said city, at a special meeting called and held in accordance with the provisions of section 3 thereof. . . .

4. By virtue of the authority given them in said Special Act, said Board of Water Commissioners have constructed four large reservoirs in the town of West Hartford, with a united storage capacity of 700,000,000 of gallons, with connecting canals. The large pipes for the conveyance of water to the city of Hartford run directly through Farmington Avenue, in said town of West Hartford, to the city of Hartford, but connecting pipes have been laid in the town of West Hartford, through a number of side streets, for various distances, ranging from 300 feet to three-quarters of a mile, and for a long time water was furnished therefrom to the

inhabitants of said town of West Hartford residing on said side streets who applied for the same, at the same rates at which water was furnished to the inhabitants of the city of Hartford.

5. Subsequent to the passage of said Special Act of 1865, the General Assembly of the State of Connecticut, at its session in 1875, passed a Special Act authorizing the Board of Water Commissioners of the city of Hartford, for the purpose of improving and increasing the water supply of said city, to take and hold any stream or watercourse and any land necessary or convenient for constructing aqueducts and reservoirs within the limits of the towns of Avon, Farmington and Bloomfield, as by said Special Act, approved June 2, 1875 (Special Acts of 1875, page 10), will fully appear.

6. Under authority of said Special Act of 1875, two new reservoirs, one in the town of Farmington, with a storage capacity of 600,000,000 gallons, and one in the town of Bloomfield, with a storage capacity of 800,000,000 gallons, have been constructed by said Board of Water Commissioners and connected with the West Hartford reservoirs as above mentioned, so that the water therefrom passes to the city of Hartford through the same line of main pipes in Farmington Avenue referred to in paragraph four.

7. The reservoir in the town of Farmington was completed prior to the year 1880, since which time the supply from said West Hartford reservoirs and said Farmington reservoir has frequently proved inadequate for the needs of the city of Hartford's use, and to such an extent that the Board of Water Commissioners of said city have been compelled to take water from the Connecticut River, in addition to the water obtained from said reservoirs, to supply the needs of the inhabitants of said city of Hartford at divers times.

8. The reservoir located in the town of Bloomfield has recently been completed, and the water therefrom has not yet been rendered available for use in the city of Hartford, but when the necessary canals have been completed, water from that reservoir will pass through the same line of main

pipes in Farmington Avenue, as the water from the other reservoirs hereinbefore referred to.

9. In the construction of said reservoirs in West Hartford, Farmington and Bloomfield, the Board of Water Commissioners of said city have expended more than $1,500,000, and there are now outstanding on account of the water debt of said city of Hartford, including the expense of said reservoirs, bonds of the city of Hartford to the amount of $970,000.

10. Soon after the construction of the first three reservoirs in said town of West Hartford, the town claimed the right to assess and tax the property of said Board situated in the town, and in the exercise of the right claimed, laid taxes on the assessment list of 1873, 1874 and 1875. An amicable submission of the question whether said property was subject to said taxation, was made to the Superior Court in Hartford County, in 1876, and the case was reserved for the advice of the Supreme Court, which advised that no part of the land was taxable except the land not used for the reservoirs; said case being reported in 44 Conn. 360. Thereafter no claim for taxes upon said exempt property was made by said town.

11. On May 22d, 1894, said Board of Water Commissioners passed a vote of which the following is a true copy : *Whereas*, the increase in population of the city of Hartford has so increased the consumption of water that the entire supply is needed for the inhabitants of the city, it is *Voted*, That hereafter no pipes shall be laid by this Board beyond the city limits, except for the purpose of carrying water to the city, and that no water be furnished beyond the city limits except to consumers now taking water, and to those whose petitions have been granted, and to dwellings upon the highway in West Hartford in which the main line of pipes is or may be laid.

12. Said Board of Water Commissioners have, since the passage of said vote, rigidly adhered thereto, and refused to supply water to many other residents and property owners in said town whose property is not situated directly upon Farmington Avenue, but which in some cases is situated

upon side streets through which connecting pipes have been laid, as stated in paragraph four. .

13. The selectmen of the town of West Hartford, in behalf of the town, and the residents thereof, thereupon brought a petition to the General Assembly of 1895, asking for additional legislation, and said General Assembly, in response to said petition, adopted the following resolution (Special Acts, 1895, p. 494): General Assembly, January Session, A. D. 1895. *Resolved by this Assembly:* That it shall be the duty of the Board of Water Commissioners of the city of Hartford to lay connecting pipes and furnish water to any of the residents of the town of West Hartford, or to owners of land or buildings in said West Hartford who may apply to them for the same, from the pipes which conduct the water through said town to the city of Hartford, whenever such residents or owners will guarantee that ten per cent. of the cost of the additional necessary connecting pipes and of the expenses of laying the same shall be annually paid to said Board as water rents or otherwise, and any of such residents or owners shall be furnished with water by said Board whenever such owners or residents shall themselves lay pipes for that purpose; and the rates so paid for water so furnished as above shall be the same as are from time to time established by said Board and approved by the Common Council of said city for the inhabitants of said city.

14. Notwithstanding said enactment of the General Assembly, said Board of Water Commissioners still refuse to furnish water to residents and property owners in West Hartford applying therefor, said Board claiming thât said Special Act cited in paragraph 13 is unconstitutional.

15. All the provisions of the resolution of the General Assembly of 1853 incorporating the said Board of Water Commissioners, and all the provisions of the charter of the city of Hartford and the Acts and Resolutions of the General Assembly relating to the powers and duties of said Board of Water Commissioners, are made part of this finding.

The questions concerning which disputes have arisen between the parties hereto, and upon which the decision of

-the court is desired, are the following: 1. Is the Act of 1895, set forth in paragraph 13, constitutional? 2. What are the rights of the inhabitants of West Hartford and the rights and duties of the Board of Water Commissioners under the Special Act of 1865, referred to in paragraph 2,—the construction of the expression "within a reasonable distance from the line of main pipes" being especially desired. Does that expression mean only within a reasonable distance from the large pipes running through Farmington Avenue, or does it apply to the connecting pipes laid in side streets? 3. Who are the judges of the question whether or not a person desiring water lives within a reasonable distance from the line of main pipes? 4. Was the Board of Water Commissioners authorized to pass the vote set forth in paragraph 11, and in its action thereunder, set forth in paragraph 12?

*Charles E. Perkins* and *Joseph L. Barbour*, for the plaintiffs.

The Act of 1895 was constitutional. There is nothing in the Act of 1865 which constitutes a contract, in the common acceptation of the term. It permits the city to obtain water under the power of eminent domain, with a provision that it shall furnish water to certain residents of West Hartford as well as to citizens of Hartford; certainly no contract in terms exists here. Public municipal corporations and their property are not subject to the rule applicable to private corporations. 3 Amer. & Eng. Ency. of Law, 745; Sedg. on Const. Law, 582; Cooley's Const. Lim. 192. The distinction sometimes attempted between property held by the city for public purposes and that which it may be said to hold for private purposes, meets little favor. 1 Dillon on Mun. Corp. §§ 27, 67; *Barnes* v. *District of Columbia*, 91 U. S. 540; 3 Pars. on Cont. 529. This court, however, has already decided that the property in question is held by the city for public use, and subject to the control of the State. *West Hartford* v. *Bd. of Water Com'rs*, 44 Conn., 360. See also Gen. Stat. § 2656; Pub. Acts of 1895, 556; *Darlington* v. *Mayor of New York*, 31 N. Y. 164; *Coyle* v. *Gray*, (Del.) 30 Atl. Rep.

728.   Moreover, the Act of 1895 does not attempt to abso-
lutely deprive the city of its water, but only to regulate its
use.   Even if this were a taking of private property for pub-
lic use, it is apparent that adequate compensation has been
made.   As to who shall decide what is a "reasonable dis-
tance," it appears clear that neither the applicant for water
nor the water board are to have that power.   Like all other
rights and duties, if the parties cannot agree, the only method
of settling the question is by an appeal to the proper legal
tribunal.   If this be true, the water board had no power to
pass its vote cutting off a large portion of the inhabitants of
the town from their right of obtaining water.

*William Waldo Hyde* and *Arthur L. Shipman*, for the
defendant.

The Act of 1895 is unconstitutional.   It impairs the obli-
gation of the contract between the State and the city of Hart-
ford, as set forth in the Act of 1865.   The only obligation
put upon the city of Hartford by the act of 1865, was to sup-
ply water to persons living in West Hartford who were
inhabitants of the town and who lived within a reasonable
distance from the line of main pipes.   The Act of 1895, if
valid, has imposed a new and serious burden on the city of
Hartford, in addition to that placed upon it as the considera-
tion for the grant of privilege conferred by the Act of 1865.
The grant by the General Assembly to the city of Hartford
in the Act of 1865, and the acceptance thereof by the city,
was in legal effect a contract by and between two competent
and equally obligating and obligated parties.   The large
investment made by the city, in reliance thereon and in con-
formity thereto, constitutes to-day the property of the city.
The functions of municipal corporations are two-fold : first,
those of a strictly public and governmental character ; sec-
ond, those relating to property rights, and which are, in a
sense, of a private character.   1 Beach on Pub. Corp. §§ 92,
712, 714; *Bailey v. Mayor, etc.*, 3 Hill, 531; *Western Sav.
Fund Soc. v. Phila.*, 31 Pa. St. 175, 185; *Bd. of Park Comrs.
v. Common Council*, 28 Mich. 228, 238; *Detroit v. Plank Road*

*Co.*, 4 id. 140, 147 ; *Fletcher v. Peck*, 6 Cranch, 87, 135, 136 ; *Pawlet v. Clark*, 9 id. 292; *Terrett v. Taylor*, ibid. 43 ; *Dartmouth College Case*, 4 Wheat. 518, 563.   The question of the invalidity of a state law as impairing the obligation of contracts, does not depend on the extent of the change which the law effects. *Farrington v. Tennessee*, 95 U. S. 679 ; *Von Hoffman v. Quincy*, 4 Wall. 535 ; Cooley's Const. Law, top p. 292 ; 2 Story on the Const. § 1385.   If the legislature has the right to direct the city to furnish its water to all the inhabitants of West Hartford, it has an equal right to impose the like obligation upon it with reference to the inhabitants of the town of Bloomfield, or Farmington, or Avon, and, in fact, the inhabitants of any town to whom it sees fit.   The mere location of the water-shed in the town of West Hartford cannot give the inhabitants of that town any right which they had not acquired when the original contract was made. The question of reasonable distance is one which must be settled in each case by the Board of Water Commissioners. From the beginning until the present time, all questions relating to the distribution of the city's water have been submitted to the final judgment and determination of that board. Under these circumstances the passage of the resolution of May 22d, 1894, was eminently proper.

ANDREWS, C. J.   The Board of Water Commissioners of the city of Hartford is a corporation created by the charter of the city of Hartford, as an agency in the carrying on of the municipal government of that city.   So far as the present case is concerned that board is identical with the municipal corporation of Hartford.   Special Acts, Vol. 3, p. 386, Vol. 5, pp. 539, 456 and 769 ; also the Acts recited in the statement of facts.   We have in this opinion referred to the Board of Water Commissioners and to the city, as meaning the same thing.

This case is brought before us by a statutory proceeding, which can be instituted only by " parties to a question in difference, which might be the subject of a civil action between them."   General Statutes, § 1200.   The plaintiffs

are three individuals described as selectmen of the town of West Hartford, suing "for the said town and the inhabitants and property owners therein," and the questions in issue relate to the validity of one statute and the proper construction of another, as affecting the power of the defendant, the Board of Water Commissioners of the city of Hartford, to take certain action unfavorable to the inhabitants and landowners of the town of West Hartford. Counsel have not suggested what kind of a civil action could be brought to determine these questions, and we have had some hesitation as to whether the case agreed on by the parties brings them fairly within the operation of the statute. Their consent could not confer jurisdiction upon the Superior Court. It can decide between them only if its judgment could have been invoked as to the same matter in an ordinary suit. We have concluded, however, that as every inhabitant of West Hartford, and every owner of land within its limits, had an interest in maintaining the validity of the Act of 1865, and in disputing the propriety of the vote passed by the defendant on May 22d, 1894, they might have joined in asking such relief from the courts as would secure to them the enjoyment of all the rights which can be claimed either under that Act or the Act of 1895. This being so, such a suit could be brought by a few of them in behalf of all. General Statutes, § 885. The plaintiffs in this proceeding, being the selectmen of the town, must have been among its inhabitants. *Union* v. *Crawford*, 19 Conn. 331. And in view of their office it cannot be doubted that they are fair representatives of their fellow-citizens in a matter which concerned the welfare of all. *Edwards* v. *Stonington Cemetery Association*, 20 Conn. 466, 476, 478. It follows that every inhabitant of West Hartford will be bound by the judgment of the Superior Court in the matter which is the subject of this amicable submission, and we therefore proceed to dispose of it upon its merits.

The Act of the legislature in 1865, set out in the statement of facts, was an amendment to the charter of the city of Hartford as it had theretofore existed. Doubts had arisen

as to what powers the Board of Water Commissioners might exercise, and the legislature put an end to those doubts by declaring what construction should be put on that charter. At that time the city of Hartford did not include within its limits the whole of the town of Hartford. A large part of the territory and of the population of the town was outside of the city. These people needed to be furnished with water quite as much as the people in the city itself. The water to be obtained was to be taken from West Hartford. Naturally the inhabitants of that town were interested not to be deprived of their own streams, unless they also should be furnished with water. They were before the legislature at that session pressing their interests. The legislature listened to their contention, and the result was that it was made the duty of the defendant board to supply water to the inhabitants of the town of Hartford living outside of the city limits, and to the inhabitants of the town of West Hartford, at the same rates, or water rents, and upon the same terms and conditions that the inhabitants of the city were, or should be from time to time, supplied, provided the inhabitants of the said towns lived within a reasonable distance from the main line of pipes. This was the condition upon which the water was to be taken from the West Hartford streams. There is nothing to indicate that the legislature intended to prefer the inhabitants of the city of Hartford over the inhabitants of the town of Hartford or of the town of West Hartford. They were all—town inhabitants and city inhabitants—put on the same footing, and a common duty to both alike was imposed upon the Board of Water Commissioners. After that Act was accepted by the city of Hartford, reservoirs were constructed in the town of West Hartford, and the water was conducted through that town and through the town of Hartford, to the city of Hartford. From the time the reservoirs were completed down to 1894, the defendant board, in the performance of its duties, laid connecting pipes through a number of side streets in West Hartford, ranging from three hundred feet to three quarters of a mile from the large pipe which runs directly to the city of Hartford, and have

furnished water therefrom to any of the inhabitants of said town of West Hartford residing on said side streets, at the same rates at which water was furnished to the inhabitants of the city of Hartford. These facts show very clearly that in the performance of its duties under the Act of 1865, the defendant board construed it to be their duty to do just what the plaintiffs' brief says it has done—and this is not controverted by the defendant—viz: to furnish water to the inhabitants of West Hartford on the same rates, terms and conditions that it furnished water to the city of Hartford, and so continued to do down to May, 1894, and that no question was raised in West Hartford, or in the town of Hartford outside the city, any more than in the city itself, as to whether or not any one lived within a reasonable distance from the line of main pipes; all were in fact treated alike. This is the practical construction which the defendant has put upon the expression " within a reasonable distance from the line of main pipes," from 1865 until May, 1894, when it passed the vote of which complaint is made, and by which it undertook to limit its duty in supplying water to the inhabitants of West Hartford. The Act of 1865 made it the duty of the defendant Board to furnish water to all those inhabitants of West Hartford who lived within a reasonable distance from the line of main pipes. The defendant has at all times since the passage of that Act, until May, 1894, furnished water to all those inhabitants of West Hartford who laid pipes in a certain way, or who gave a certain guaranty. It has thereby declared that all those inhabitants did live within a reasonable distance of the line of main pipe, and that it was its duty under the law of 1865 to supply them with water. This practical construction has been followed for nearly thirty years. It is now too late for the defendant, as against the plaintiffs, to deny that such was the real meaning of the law of 1865. *Given* v. *Wright*, 117 U. S. 648; *Galway* v. *Met. E. Ry. Co.*, 128 N. Y. 132; *Sayers* v. *Collyer*, L. R. 28 Ch. Div. 103. It is the duty of the defendant to continue to furnish water to the inhabitants of West Hartford, as it has heretofore done, at the same rate and

upon the same terms and conditions that it furnishes water to the inhabitants of the city of Hartford.

The true scope and meaning of the Act of 1865 being thus shown, it is apparent that the defendant had no authority to pass the vote of May 22d, 1894. The board could not put bounds to the duty imposed upon them by the very charter which made them a corporation. That charter made it their duty to furnish water to all those inhabitants of West Hartford who live within a reasonable distance of the line of main pipes. The same duty still remains upon it. If hereafter any inhabitant of that town desires to obtain water from the defendant, and it declines to furnish it to him on the ground that he does not live within such reasonable distance, the question can be decided only by an application to the proper court. And the question should be decided, not alone by the number of rods and feet, but upon a due consideration of all the circumstances in the case as well as the practice of the defendant, and the decision should be such as to be fairly promotive of the purpose which the legislature had in mind in passing the Act of 1865, viz: the furnishing of water to the inhabitants of West Hartford and to the inhabitants of the town of Hartford and the city of Hartford—and not such as to be restrictive or prohibitory of those purposes. The courts of the State must be the judges in such cases. Neither party alone can decide it.

The case presented to this court by the agreed statement of facts, as well as by the briefs of counsel, indicates that the only real difference between the parties is upon the validity of the defendant's said vote of May, 1894. And as that question is decided by the construction of the Act of 1865, we have had no occasion to consider the Act of 1895.

. We ought to say, however, that we do not assent to the claim made by the defendant, that by the Act of 1865 the city, as to the property now in question, was made a private corporation. That precise question was passed upon by this court nearly twenty years ago, in the case of the *Town of West Hartford* v. *Board of Water Commissioners of Hartford*, 44 Conn. 360, 367, 371, heard in 1877. The same par-

ties were before this court who are now here, and the same question now made was discussed and decided: that the city of Hartford held the property which was then and is now in the name of the Board of Water Commissioners of that city, as a public municipal corporation and not as a private one. That decision is binding on the parties and is binding on the court. In the charter of such a corporation there is no contract. 1 Dillon on Mun. Corp. § 54.

In answer to the several questions in the agreed statement we say: 1st. We have had no occasion to consider the Act of 1895. 2d. The Act of 1865 is to be construed as set forth in the opinion. 3d. The courts are the judges, if ever that question shall arise. 4th. The Board of Water Commissioners had no authority to pass the vote of May 22d, 1894.

The Superior Court is advised to render judgment accordingly.

In this opinion TORRANCE, FENN and BALDWIN, Js., concurred.

HAMERSLEY, J. While concurring in the decision, I cannot see the pertinency of the reference in the opinion to the case of *West Hartford v. Board of Water Com'rs*, 44 Conn. 367. That case settled no point except the one decided, *i. e.*, that land owned by the city while in actual use for the purpose of supplying its citizens with water, does not come within the meaning of the General Statutes describing property subject to taxation. The essential import of an act authorizing a city to acquire property for purposes other than the execution of governmental duty imposed by charter, or imposing on a city burdens outside the range of its municipal duties, was not determined in that case and is not considered in this.