MARIANNE HOPKINS *vs.* THE METROPOLITAN DISTRICT.

MALTBIE, C. J., HAINES, BANKS, AVERY and CORNELL, Js.

Argued June 14th—decided August 9th, 1932.

*Louis Y. Gaberman,* with whom was *Glenn W. Fox,* and, on the brief, *Stewart N. Dunning,* for the plaintiff.

*W. Arthur Countryman, Jr.,* for the defendant.

MALTBIE, C. J.   This is an action to settle the title to a lot of land owned by the plaintiff in West Hartford.   The defendant in its answer claims an interest in the property by reason of a lien for laying a water main, which was filed against a considerable tract of land of which the plaintiff's lot was then a part.   This lien was filed by the board of water commissioners of the city of Hartford, of which the defendant is the successor as regards furnishing a water supply in Hartford and West Hartford.   The stipulation of facts refers to another similar lien filed by the board; but that lien has been released, no question is made as to the validity of the release, the defendant makes no claim as to it, and there was no occasion to include it in the reservation and no need to discuss it.   The lien with which we are concerned arose out of an assessment of benefits for laying a water main in Ridgewood Road, which runs in front of the plaintiff's lot. This main was laid as the result of the application of three persons, none of them being either the plaintiff or a predecessor in title to her land.   The board of

water commissioners made an assessment against her predecessors in title. The work on the main was completed May 26th, 1928, and the lien was filed for record January 11th, 1929. Two payments were thereafter made upon the assessment, but a substantial balance remains unpaid.

The most far-reaching question presented by the reservation concerns the power of the board of water commissioners of Hartford to make an assessment against property lying in West Hartford for the laying of water mains. Its solution requires a consideration of the history of the rights and duties of the board as regards furnishing a water supply in that town. In *Stevens* v. *Water Commissioners,* 102 Conn. 218, 221, 128 Atl. 713, we traced the general history of the board. As regards the inhabitants of West Hartford, its duty to furnish water had its origin in certain Special Acts giving it power to establish a reservoir in West Hartford to supply the city of Hartford with water. 5 Special Laws, p. 329 (1859); p. 539 (1863); p. 769 (1865). Section 2 of the last Act provided that if the board should introduce water into Hartford from sources of supply in West Hartford, it should be its duty to supply water to the inhabitants of West Hartford living within a reasonable distance of its main pipes. Thereafter the board laid connecting pipes in a number of side streets in West Hartford and supplied water to its inhabitants from them, but in 1894 it voted thereafter not to supply water to inhabitants of the town except to those who were already receiving it, or whose petitions for service had been granted, or to dwellings upon highways in which the main lines of the pipes were laid. In a friendly suit thereafter brought, *West Hartford* v. *Water Commissioners,* 68 Conn. 323, 36 Atl. 786, we held that, in view of the practical construction that had been placed upon the

words of the law, "within a reasonable distance from the line of main pipe" it was too late for the board to change its practice and that all inhabitants living within a reasonable distance of the main line were entitled to service, though not dwelling upon any highway in which main pipes were laid. This action was brought in 1896, but in 1895 the legislature had passed a Special Law concerning the duty of the board to supply water in West Hartford. 12 Special Laws, p. 494. In the case above referred to, we did not find it necessary to consider that law. It made it the duty of the board to lay connecting pipes and furnish water to any of the residents of West Hartford or owners of lands or buildings therein who might apply therefor, whenever they would guarantee that ten per cent of the cost of laying pipes would be paid the board from water rents received from them or otherwise, or when they would themselves lay the necessary pipes. This Act evidently contemplated that either those to be served would themselves lay the pipes or that the cost would be met by the sums received for service to them.

This arrangement evidently did not meet the needs of the residents of the town, because in 1897, at the next session of the legislature, the town was authorized to appoint a water commissioner or water commissioners whose function it should be at its expense to lay water pipes in the town "for the purpose of supplying water to such persons in West Hartford, and such persons only, as are or may be entitled by law to receive water." Just what was intended by the words quoted is not clear. By the Act of 1895, any inhabitants of the town were entitled to service if the cost of the necessary pipes was met by them or a certain return was guaranteed from the service; the duty of the board of water commissioners of Hartford to supply water already embraced all the inhabitants of West Hartford;

and the Act provided a method of meeting the cost of laying connecting pipes. In this and subsequent Acts the water commissioners of West Hartford were given power to make assessments against those using the supply from the pipe they laid, to cover the cost of installing and of repairing and renewing them, and to file liens if the assessments were not paid. 12 Special Laws, p. 886; 13 Special Laws, pp. 40, 483, 722, 1031; 16 Special Laws, p. 941. In subsequent years the water commissioners did lay a considerable number of pipes under these laws, made assessments to cover the cost thereof and filed liens.

This evidently did not prove entirely satisfactory. In 1913 a Special Law was passed as follows: "The board of water commissioners of the city of Hartford shall supply water to the town of West Hartford, and to persons, firms, municipal, quasi-municipal, and private corporations, and bodies politic and corporate, within said town, for all uses for which water is supplied in the city of Hartford, and upon the terms and conditions for each use as in said city." 16 Special Laws, p. 689. At the next session of the legislature, the water commissioners of West Hartford were authorized to transfer and convey the water mains laid by them to the board of water commissioners of Hartford upon such terms as should be agreed upon. 17 Special Laws, p. 438. Prior to March 1st, 1916, a settlement was made by the two water boards and $7500 was paid to the water commissioners of West Hartford. Thereafter these commissioners apparently laid no more pipes.

It may be that the concluding words of the law of 1913 were not meant to include a power in the board to lay pipes, make assessments and file liens such as they exercised in Hartford, but only to compel it to supply water to pipes laid under the Act of 1895 or

by the water commissioners of West Hartford. However that may be, a Special Law approved April 29th, 1927, was passed, which was in terms a substitute for the Act of 1895. This made it the duty of the board to lay connecting pipes and furnish water to any of the residents of or any of the owners of land or buildings in West Hartford "who may apply for the same" upon the same terms and conditions as apply in Hartford, and the Act concluded: "The rates paid for water as herein provided and the cost of installing pipes shall be levied by assessment or otherwise under the same terms and conditions as apply to the inhabitants of the city of Hartford." 20 Special Laws, p. 239.

If, then, we turn to the charter of the city of Hartford, we find that the board had at the time the assessment was made general charge of furnishing water in the city, but that the court of common council was under a duty to make ordinances prescribing the duties of the board when not prescribed in the charter of the city, among other things, as regards the mode in which the "cost of laying or replacing service pipes upon public or private property, or taxes, shall be collected by assessment upon the lands and buildings benefited thereby or otherwise, and shall be secured by lien upon lots, houses or tenements or otherwise." 18 Special Laws, p. 434. In an ordinance adopted by the common council of Hartford in January, 1922, a copy of which is annexed to the stipulation, the board was authorized, whenever in its opinion public necessity and convenience required the extension of any main pipe, to vote to make such extension, after notice and hearing, and was directed to assess the cost of the extension against land found by the board to be specially benefited thereby which abutted upon the highway in which the main was to be laid, in proportion to the

frontage of the land. That the legislature had the power to make effective in West Hartford the provisions of the charter of the city of Hartford and of such ordinances as the court of common council might enact under it, as an incident to a duty imposed upon one of its branches to perform service there, is not open to question. *Chicago Packing & Provision Co.* v. *Chicago,* 88 Ill. 221, 227; *Toledo* v. *Edens,* 59 Iowa, 352, 13 N. W. 313; *Coursey* v. *Andalusia,* 223 Ala. 24, 134 So. 672; 2 McQuillin, Municipal Corporations (2d Ed.) § 693.

The plaintiff claims that the clause in the law of 1927 referring to the application to be made for service is a limitation upon the power of the board to assess the cost of pipe so that assessments can be made only against those who apply for service. In the first place, the law cannot be construed in this way except by wresting the clause in question entirely out of its context and reading it into the concluding sentence which we have quoted. Secondly, to give such a construction to the Act would result in one of two things; either it would defeat the plain purpose of the law, to make service available to all inhabitants of the town who desire it and to whom it may reasonably be extended; or else it would put the cost in many instances largely upon the water board without power of assessment, a result which is in harmony neither with the method the board uses in Hartford nor with all pre-existing laws applicable in West Hartford, wherein careful provision was made that the board should not be at expense for extensions, save under the original Act, where the person receiving service lived within a reasonable distance of its main pipe line. The Act imposes a duty to serve the inhabitants of West Hartford and the owners of land or buildings therein. The clause in question is a natural and proper limitation

upon that duty, making it applicable only where some inhabitant or owner indicates his desire for service. Where such an application is made, the board must have the same power to lay pipes in West Hartford and to assess the cost thereof that it has in Hartford. It follows that, an application for service by certain inhabitants of the town having been made, and the board having voted to lay the pipe, it had the power to assess the cost upon the land which fronted upon the highway in which it was laid and which it found to be specially benefited thereby.

The next question concerns the time within which a lien to secure an assessment shall be filed. The ordinance already referred to provided that any assessment should be a lien upon the land or buildings on account of which it was made from the time of passage by the board of the vote to extend the main "but shall not remain a lien thereon for a longer period than three months from the final completion of said work unless said board shall within that time lodge with the clerk of the town within which such land and buildings are situated for record, a certificate . . . describing the premises and the amount assessed thereon." The Act of 1921 was amended by a Special Law which took effect June 22d, 1927. 20 Special Laws, p. 441. This added a provision as to liens, giving them precedence over other liens or encumbrances, except taxes, providing for their foreclosure, and for the filing of a certificate in the office of the town clerk of the town wherein the lien accrues, and the provision concluded as follows: "But no such lien shall attach unless such certificate, signed by the president or secretary of said board of water commissioners, describing the property on which the lien exists and the amount to be claimed by said board as a lien thereon, shall be filed with such town clerk within one year after the assessment

or charge shall become payable." As this Act took effect before the laying of the pipe in question was voted by the board or any assessment made, it applied to the assessment and lien now in question, and the fact that the application for the laying of the pipe was made before its enactment is not of consequence. The plaintiff contends, however, that its effect was not to abrogate the provision in the ordinance under which a certificate of lien must be filed within three months from the completion of the work of laying the pipe, but only authorized the court of common council to fix by ordinance any time up to a year within which it must be filed, and that as the lien in question was not filed within the time fixed by the ordinance, the certificate was ineffective to continue it. The intent of the legislature was evidently to require that the certificate of lien for an assessment, to be valid, must be filed within one year from the completion of the work. Such a provision requires no ordinance to make it effective. The Special Law covers the same field as did the provisions of the ordinance concerning the filing of certificates of lien and must be taken to supersede them. *Shelton* v. *City of Shelton,* 111 Conn. 433, 438, 150 Atl. 811. The certificate was filed within the time allowed by the terms of the Act and this was all that was necessary. It is true that, in the vote of the board accepting the report of its chief engineer as to the completion of the work, its secretary was instructed to file liens within three months from the completion of the work; but his failure to obey this instruction cannot make invalid a certificate of lien which was filed in accordance with the requirements of the law.

The vote of the board directing the laying of the pipe stated that it was to be laid in Ridgewood Road and that the cost should be assessed against the land

and buildings specially benefited thereby. It then made the assessment, giving the names of the owners of the land, the number of front feet, and the amount assessed against it. Such an assessment follows the usual practice in levying assessments in this State and was sufficiently certain and definite. If it became necessary to file a certificate of lien, the boundaries of the land could be ascertained and inserted in it, as was done in this case. The description of the land in the certificate was sufficient. The plaintiff apparently claims that, as only a portion of the tract would be specially benefited by the laying of the pipe, this portion should have been segregated and the lien filed only against it. The stipulation does not afford a basis for a conclusion that only a part of the tract would receive special benefits. But, that aside, the board was correct in laying its assessment against the tract as a whole. *Appeal of Phillips,* 113 Conn. 40, 48, 154 Atl. 238.

Finally, we are asked whether, having filed the lien which was released for the laying of a pipe in one street upon which the property in question abuts, the board had any right to file a lien for the pipe in question. The stipulation does not attack the amount of the assessment for the Ridgewood Road extension and recites no facts which indicate that, because of the laying of the first pipe, that in Ridgewood Road could confer no special benefits upon the land. If each resulted in fact in special benefits, an assessment on account of the laying of each was proper. The situation does not essentially differ from that which exists where a new street is laid out beside a lot already fronting on one previously established. The existence of the old street may affect the amount of special benefits accruing from the new one or, conceivably, might result in the new one conferring no special

benefit. But if in fact it did confer such benefit, an assessment would be proper. *Allen* v. *Krenning,* 23 Mo. App. 561, 570; *Morrison* v. *Hershire,* 32 Iowa, 271, 279; 1 Page & Jones, Taxation by Assessment, p. 915.

We answer the first question propounded in the stipulation "No"; questions 2 to 7 inclusive we answer "Yes"; and to question 8 we say that the lien for the extension of the water pipe in Ridgewood Road is valid.

The allowance of costs in reservations to this court rests within its discretion. General Statutes, § 2271. No reason appears why this case should have been reserved rather than submitted to the trial court for decision except a desire for a speedier disposition of the issues involved. Costs will be taxed to the defendant as though it were the prevailing party upon an appeal.

In this opinion the other judges concurred.