[No. 2,131.]

## THOMAS D. MOTT et al. v. MARIA ANTONIA VILLA DE REYES et al.

Printing .Copy of Document in Brief.—If the attorney for one of the parties appends to his brief what he calls a certified copy of a document which is not in the record, the party which he represents cannot complain if the Court treat it as properly before it.

License by Mexican Authorities to Occupy Land.—A license to occupy land temporarily, called a provisional grant, granted by the Governor of California before the acquisition of California by the United States, conveyed no title, legal or equitable, to the land, and was revocable at pleasure.

Idem.—It was the practice of the Mexican Government to consider a long possession held under such provisional grant or license, as entitling the occupant to some sort of priority of right to purchase when the land came finally to be disposed of; but this priority did not rest on any legal obligation which the Government was under to such occupant.

Right of Mexican Government to Annul a Grant of Land.—The question reserved, as to whether the Governor of California, when it was a part of Mexico, had the power, after a grant of land had been made to a party in due form of law, afterwards to annul and vacate it, on the ground that it was fraudulently obtained, and grant the land to another.

Right of Mexican Grantee to Possession until Survey.—A party whose Mexican grant to a specific quantity of land within the exterior boundaries of a larger tract, has been confirmed by the United States Dis-

trict Court, has a right to the possession of all the land within the exterior boundaries of the larger tract, until the Government of the United States shall segregate the part confirmed, by a final and approved survey.

HARMLESS ERRORS WILL NOT REVERSE JUDGMENT.—A judgment will not be reversed on account of rulings of the Court below which are not correct, if those rulings have worked no injury to the losing party, and could not have changed the result.

ACTS OF OFFICERS OF FOREIGN GOVERNMENTS.—The general rule is, that when the acts of the officers of a foreign Government are brought in question in our Courts, the acts performed by them will be presumed to have been within the scope of their lawful authority, unless the contrary appears.

REVOCATION OF A MEXICAN GRANT OF LAND.—Certain acts and orders of the Governor of California, when it was a part of Mexico, made in relation to a former grant of land, reviewed and discussed, and held not to be a revocation of such former grant, and not to amount to a grant, themselves, but to be only a license to occupy.

GRANT OF THE SOBRANTE.—Two parties were contesting before the Governor of California, while it was a part of Mexico, the validity of their respective grants to the same tract of land, being grants which each had of a specific quantity within the exterior limits of a larger quantity; in the meantime the Governor granted to one the sobrante within such exterior limits. *Held*, that this grant of the sobrante did not impair the rights of the other whose grant was the better one.

APPEAL from the District Court of the Seventeenth Judicial District, County of Los Angeles.

The defendants recovered judgment in the Court below, that the plaintiffs had no title to the lands known as the "Rancho Boca de Santa Monica," and that the defendants owned the same.

The other facts are stated in the opinion.

*Glassell, Chapman & Smith,* for Appellants.

The grant of Governor Echeandia to Sepulveda in 1828, under the laws then in force, was a valid grant of the specific premises. In the absence of all conflicting proof the Governor's authority is to be presumed. (*United States* v. *Peralta,* 19 How. 347; *Reynolds* v. *West,* 1 Cal. 322; *Payne & Dewey* v. *Treadwell,* 16 Cal. 220.) The grant to Marquez and Reyes, dated June 19th, 1839, was void, the Government having no

title to convey. (*Stoddard* v. *Chambers*, 2 How. U. S. 284; *Bissell* v. *Penrose*, 8 Cal. 317.) The decrees of Governor Alvarado, of December, 1839, were a final adjudication to that effect. The Governor was the supreme appellate Judge. (1 Cal. 574; *Nieto* v. *Carpenter*, 7 Cal. 534; 21 Cal. 457.) The Government could annul its grant on the ground that it had been fraudulently obtained. (20 How. U. S., 33, 34; 4 Wallace, 332; 11 How. U. S. 552; Opinions of Attorney General, 120.) It is presumed that the acts of the Governor were within the scope of his legitimate functions. (*Payne & Dewey* v. *Treadwell*, 16 Cal. 227.) Marquez and Reyes having no title, the sobrante grant vested a complete title in Sepulveda, even if he had none before.

*V. E. Howard & Sepulveda*, also for Appellants.

The grant to Marquez and Reyes was under the control of the Governor until the approval of the Departmental Assembly, without which it did not become valid. (Regulations of 1828; *Nieto* v. *Carpenter*, 7 Cal. 34.)

The vacation of the grant to Marquez and Reyes was by the action of the Governor with the approval of the Departmental Assembly. (*United States* v. *Peralta*, 18 How. U. S., 347.)

The confirmation of the grant to Marquez and Reyes can operate only against the Government and has no effect as to third parties. (*United States* v. *Carilland*, 1 Black. 345; *United States* v. *Neighby*, 1 Black. 305.)

*S. Haley*, also for Appellant Haley and wife.

*Charles H. Larrabee and Henry Hancock*, for Respondents.

The marginal orders of Jimeno and Alvarado were void. (*Malarin* v. *United States*, 1 Wallace, 289; *Graham* v. *United States*, 4 Wallace, 261; *Pico* v. *United States*, 5 Wallace, 539; *Waterman* v. *Smith*, 13 Cal. 411; *United States* v. *Fremont*, 17 How. 558.)

By the Court, Crockett, J.:

The action is ejectment for a tract of land situate in the County of Los Angeles, and which is described in the complaint as the tract known as the "Rancho Santa Monica," or "Boca de Santa Monica," containing two square leagues, more or less. The plaintiffs claim under a Mexican grant to Francisco Sepulveda, which has been confirmed by a final decree of the United States District Court; whilst the defendants claim under a similar grant to Marquez and Reyes, which has also been confirmed by a final decree of the same Court. But there has been no final approved survey in either case, and, consequently, no patent has issued in either.

The plaintiffs claim that the title of Sepulveda had its inception in a provisional grant, or concession, made to him in the year 1828 by Governor Echeandia, followed in the same year by an act of juridical measurement, by the Alcalde of Los Angeles, by which Sepulveda was let into possession, and his boundaries established, and which, it is claimed, included the premises in controversy.

On the other hand, the defendants claim that the title of Marquez and Reyes originated in a provisional concession, made in the year 1827, by the Ayuntamiento of the Pueblo of Los Angeles, to Alvarado and Machado, who immediately entered into possession; that Machado soon after abandoned the possession, and surrendered his right in the land to Alvarado, who continued in possession until his death, whereupon his sons succeeded to the possession and right of their father, and continued in possession until the year 1838, when they removed from the premises, and, with the consent of the Ayuntamiento, transferred their rights and surrendered their possession to Marquez and Reyes, who have ever since continued in possession; that in the year 1838 Marquez and Reyes petitioned the Governor for a

grant of the land, and that in July, 1839, after due proceedings had, the acting Governor, Jimeno, made a grant to them in due form, and in full property, in accordance with the colonization laws; that in August, 1839, the juridical possession was duly delivered to them by the proper officer, in accordance with the grant.

It is this title which has been finally confirmed by the United States District Court to Marquez and Reyes, or their successors in interest. It appears from the record, that soon after the grant was made to Marquez and Reyes, Sepulveda remonstrated against it, and took steps to vacate it, if practicable. On August 13th, 1839, he applied to the Alcalde of the proper district, requesting a copy of the original act . of juridical measurement, by which he was placed in possession, in 1828, and if the document could not be found, that he take the deposition of Carillo, the former Alcalde, who had placed him in possession. In reply to this request, the Alcalde stated that the document could not be found in his office, and thereupon proceeded to take the testimony of Carillo, in writing, who testified in substance, that in the year 1828, in accordance with a provisional concession by the Governor, he had placed Sepulveda in possession of the land. This testimony appears to have been taken ex parte, and without notice to Marquez and Reyes. On presenting this testimony to Jimeno, the acting Governor, the latter, on October 31st, 1839, made upon it a marginal order, in the following words: " Ordered, that this expediente be transmitted to the Prefect of the Second District, who will see that Francisco Sepulveda is not molested in the occupation which, since the year 1828, he has of the land known by the name of San Vicente and Santa Monica, and shall compel the said Sepulveda to transmit the exact map of the land in question." On the eighteenth of December of the same year Sepulveda presented the same document to Alvarado, who in the meantime had become Governor, and who there-

upon indorsed upon it the following marginal order: "Let notice be given to the Prefect, to the effect that in obedience to the last disposition of this Government, in regard to the place called Santa Monica, this may be restored to Francisco Sepulveda, because he has sufficiently justified the right of occupation under which he has been in possession. The Prefect shall also give notice of this resolution to the individuals Marquez and Reyes, in whose favor a title of concession of said Santa Monica was issued by this Government. That the Government, in making said concession, was taken advantage of by captious information, given by the Ayuntamiento of the City of Los Angeles; that the Ayuntamiento ought to have been well informed in regard to this affair, and should not have withheld from the Government the proper information. Also, a title of concession shall be issued to the party interested, Francisco Sepulveda, reserving this expediente to be examined in due course of law, in case that the land therein granted should result not to belong to the common lands appertaining to said city, when the *fundo legal* of the same shall be determined." This order or decree was signed only with a rubric, and there was no direct evidence that it was the rubric of Alvarado; but enough appears in the record, and from the stipulation of the parties, to remove all reasonable doubt on this point. Two days later, to wit: on the twentieth December, Governor Alvarado indorsed on the expediente of Marquez and Reyes an order or decree, as follows: "Let the present expediente be added to the other one, presented by Francisco Sepulveda, by which he justifies that he has in his favor the right of occupation in the hereinbefore mentioned land, and for said reason it has been disposed that the parties interested shall dispossess themselves of the foregoing grant." The plaintiffs contend that these several orders or decrees had the effect to vacate and annul the grant by Jimeno to Marquez and Reyes, and operated as a concession

of the land to Sepulveda. On the other hand, the defendants claim that the Governor had no power to annul the grant, and particularly by an ex parte proceeding, and without notice to Marquez and Reyes, who had no opportunity to be heard in defense of their rights. The general rule is, that when the acts of the officers of a foreign Government are brought in question in our Courts, the acts performed by them will be presumed to have been within the scope of their lawful authority, unless the contrary appears. But in 1839 the authority of the Governor of California to grant lands was derived wholly from the colonization law of 1824, and the regulations of 1828; and there is nothing in either the law or the regulations to justify the inference that the Governor had the authority, at his mere arbitrary discretion, and without notice, or hearing the parties in interest, to divest a person of his estate in lands, previously granted to him in due form of law. We have been referred to no law or regulations of the Mexican Government which conferred upon the Governor an arbitrary power of this character, so repugnant to the principles of justice and to the usages of civilized nations.

It is unnecessary for the purposes of this decision to inquire whether or not the Governor might have annulled and set aside a grant improvidently issued or fraudulently obtained, after hearing the proofs and allegations of the parties in interest. That question does not arise in this case, as there is nothing in the record to show that Marquez and Reyes had an opportunity to be heard before the decree was entered annulling their grant; and in the absence of such a showing, I think it clear that the Governor, by a purely ex parte proceeding, had no power to annul it. But the Governor himself evidently did not consider his action in the premises as final and con-

clusive of the rights of the parties; for we find that in the following month of March he transmitted to the Departmental Assembly, the expedientes of Sepulveda, and Marquez and Reyes, respectively, accompanied by a communication inviting attention to the controversy between the parties, and submitting the matter to the consideration of the Assembly. It is true, this communication from the Governor does not appear in the record; but its purport sufficiently appears from the proceedings of the Assembly; and if it did not, one of the counsel for the plaintiffs has appended to his brief a certified copy of it, and plaintiffs, at least, cannot complain if we treat it as properly before us. On receiving the communication, the Assembly referred the matter to the Committee on Agriculture, who apparently examined with great fairness and care the question at issue between the parties, and who made a report to the effect that "in order to decide so delicate and arduous an affair, this committee have kept in view the justice, the honor, and the dignity of the Government, and the evil resulting to any of the contestants by ejecting them from the land they actually hold in possession." They further report that it appears from the communication of the Governor, and from the respective expedientes, that neither of the parties ever had a grant or the juridical possession (evidently meaning that the parties did not produce, or have in their possession, the provisional grants or acts of juridical possession or any documentary evidence to prove their existence); but that it appears from the proceedings had before the Prefect, that from 1826 Alvarado and Machado were in the actual possession of Santa Monica, and that in 1828 San Vicente, and the adjoining pasture of Santa Monica, were measured off to Sepulveda, by Carillo, then the Alcalde of Los Angeles. They, therefore, recommend the Assembly to agree with the Governor upon three articles, to wit:

First—That said parties "shall maintain themselves on

their known tracts of land, without intruding upon the lands of each other."

Second—"The Departmental Assembly will, upon the first opportunity, declare the *ejidos* of the City of Los Angeles, in order that the supreme Government may allot freely the outside lands."

Third—"After the survey of the *ejidos* and boundaries of the said city is performed, his Excellency, the Governor, will grant in favor of whom he may deem convenient, and be of justice."

This report was adopted by the Assembly. From these proceedings it is clear that the *ejidos* of Los Angeles had not then been defined, and might possibly include this land. It was, therefore, deemed best to leave the rights of the parties in abeyance until the *ejidos* should be assigned, after which the Governor would be at liberty to dispose of the outside lands according to existing laws, and, in the meantime, that each of the parties should restrict himself to the possession of his "known lands," leaving the Governor to settle the controversy between them, after the *ejidos* of Los Angeles shall have been defined. That the Governor did not consider his decree of December 20th, 1839, as concluding the rights of the parties is also apparent from his decree of February 4th, 1840, by which he refers the parties to the Prefect, who is ordered to hear the allegations and proofs of the contestants, and directs that the possession of the land be suspended "until a new resolution be given therein." After the proceeding of the Departmental Assembly, already noticed, there appears to have been a partial cessation of the controversy for a time. But in 1843, after Micheltorena had become Governor, Marquez and Reyes renewed the contest, by a petition to the new Governor, in which they recite their grievances, and state that their title papers had been taken from them by the order of the Government, in 1839, and had never been restored to

them, and they pray for a restoration of the papers, and that their title to the lands be established. On receiving this petition, the Governor ordered the Prefect to report as to the titles of the parties. In his report, the Prefect states that the land was granted, in 1839, to Marquez and Reyes, and subsequently, in December of that year, to Sepulveda. Thereupon the Governor ordered the parties to be summoned to appear before him on a specified day, with their respective titles; but he appears to have taken no further action in the matter, owing, probably, to the civil disturbances in the country, which commenced soon afterwards, and ended only with his expulsion from California. In 1846 Sepulveda applied to Pio Pico, the then Governor, for a grant of the sobrante of the ranchos San Vicente and Santa Monica. It appears from the expediente on this application that the contest between Sepulveda and Marquez and Reyes remained still unsettled, and the Governor did not attempt to adjust it, but granted to Sepulveda the sobrante of the two ranchos, without interfering with the prior rights of either party. There is omitted from this chronological history of these complicated titles, and of this protracted litigation, a mass of minor details not deemed to be essential to a clear comprehension of the controlling facts, and of their legal effect. From these facts my conclusions are:

First—That prior to the year 1839 neither party had any title, *eo nomine*, to the land in contest. The so-called provisional grants under which they claimed were not produced at the trial, and were not to be found in the archives in 1839, or at any time since; but it sufficiently appears from the record that they were only licenses to occupy temporarily lands which would or might be included within the *ejidos* of Los Angeles. These licenses were clearly revocable at the pleasure of the authorities, and conveyed no title, either legal or equitable, to the land itself.

Nevertheless it was the practice of the Government to

consider a long possession, held under a so-called provisional grant of this character, as entitling the occupant to some sort of priority when the land came finally to be disposed of; a priority resting in no legal obligation, but founded on the apparent justice of awarding to one already in possession, and who had probably made improvements on the land, a prior right to obtain the title in full ownership.

Second—That the grant from Jimeno to Marquez and Reyes was made in due form and in accordance with the colonization law of 1824 and the regulations of 1828, and was, therefore, a valid grant.

Third—That the concession, by Alvarado to Sepulveda, without notice to Marquez and Reyes, did not have the effect in law to invalidate or annul their prior grant.

Fourth—That the proceedings of the Departmental Assembly left the titles as they were before.

Fifth—That the grant by Pio Pico was only of the sobrante, and did not have the effect to interfere with or impair the rights of Marquez and Reyes, whose title has been confirmed by a final decree of the United States District Court, to the extent of one and a half square leagues; and to that extent, in my opinion, the defendants have the better title, and are entitled to the possession of all the land included within the exterior boundaries specified in their decree of confirmation, until the quantity confirmed to them shall be segregated and set apart by a final approved survey. It has been suggested in argument that the defendants are in possession of lands outside of the tract confirmed to them and included within the plaintiffs' decree of confirmation, and that to this extent, at least, the plaintiffs are entitled to recover. I am unable to determine from the proofs in the cause, whether or not the fact is as alleged. But if it be so, it is at least questionable whether they could recover in this action any land outside of the tract known as "Boca de Santa Monica," which is the tract described in their com-

plaint, and to recover which the action is brought. This is the same tract which has been confirmed to the ancestors of the defendants and to which they have the better title. If the plaintiffs desired to recover any lands outside the exterior boundaries of this tract they ought to have described them in their complaint, which they have omitted to do, as I understand the complaint. The plaintiffs rely upon several rulings of the Court as erroneous, and demand a reversal of the judgment on this ground. But these rulings, if not substantially correct, have worked no injury to the plaintiff and could not have varied the result of the action.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.

[The foregoing opinion was delivered at the April Term, 1872. A rehearing was granted, and after the rehearing the following opinion was delivered.]

By the COURT:

The argument on the rehearing has wrought no change in the views expressed in the opinion heretofore delivered in this cause, unless, possibly, in respect to the power of Governor Alvarado to vacate and annul the grant to Marquez and Reyes, under the circumstances disclosed in the record. In the view we take of the case it is unnecessary to decide that point, and we prefer to reserve our opinion upon it until some case shall arise in which it shall be our duty to decide it. We think it is clear in this case that the marginal order entered by the Governor, on the 18th December, 1839, on the deposition of Carillo, and a similar order entered on the twentieth of the same month, on the expediente of Marquez and Reyes, were not intended to be, or understood by him, as a final adjudication of the rights

of the parties.   Whatever doubt might arise on this point, looking only at the face of the orders themselves, is dispelled by the subsequent action of the Governor; for we find that on the fourth of the following February he addressed a communication to the Prefect, directing him to summon before him "the parties—Sepulveda, Marquez, and Reyes—to appear and offer all the proofs, and plead whatever each party may believe most convenient to his right—allowing said parties sufficient time for said purpose; and shall also order that the possession of the land in dispute be suspended until a new resolution be given therein.   After this is done the expediente shall be returned to the Governor, with full report by said Prefect, stating the merits and circumstances of the individuals, and give every other information proper to illustrate the matter, in order that a just decision be given in this case."   This order was made on a petition of Marquez, remonstrating against the injustice of the proceedings, by which Sepulveda was seeking to deprive Marquez and Reyes of the land.   In obedience to the order of the Governor, the Prefect summoned the parties before him, heard their statements, and took the testimony of witnesses, and, on the seventh day of March, made his report to the Governor, to the effect that Marquez and Reyes were entitled to the land, and that Sepulveda had no just claim to it.   Afterwards, on the twenty-seventh March, the Governor transmitted the expedientes to the Departmental Assembly, accompanied by a communication, in which—referring to Sepulveda and Marquez and Reyes—he says: "Neither of these individuals present any document of possession or grant that represents those lines that had been marked out, when the lands in question were adjudicated, because formerly these formalities were not observed in the lands granted near the pueblos by these Ayuntamientos, for the reason that they partook of the character of provisionals; but now that each one of these old neighbors desires to

secure his possessions under the regulations established by the colonization laws, they must necessarily enter into disputes, and the Government occupies much of its time in settling their differences. For that reason, and for the object of giving this business the resolution most just, your Excellencies will be pleased to examine what you may think convenient, in view of the documents to which I refer." The Departmental Assembly proceeded to consider the subject, and the result of their deliberations is stated in the opinion heretofore delivered. Their conclusion was, in substance, that the several parties should remain in possession "of their known tracts of land, without intruding upon the lands of each other," and that after the *ejidos* of Los Angeles were assigned "the Governor will grant in favor of whom he may deem convenient and be of justice." Nothing further appears to have been done affecting these titles during the administration of Governor Alvarado, and the Departmental Assembly took no further step in the business. These transactions demonstrate beyond cavil that neither the Governor nor the Departmental Assembly considered the marginal orders of the eighteenth and twentieth December as final in their nature, or as concluding the rights of Marquez and Reyes. On the contrary, it is clear that the controversy was left open until after the *ejidos* should be assigned, when the Governor would be at liberty to make such disposition of it as justice might demand.

We cannot be reasonably expected, after the lapse of more than thirty years, to attribute to these marginal orders a final and conclusive effect not attributed to them by the Governor himself, or by the Departmental Assembly.

The result at which we have arrived is the same as announced in our former opinion, which will stand as the opinion of the Court, except as herein modified or explained.

Judgment affirmed.