[L. A. No. 1793. In Bank.—January 2, 1908.]

## CITY OF SOUTH PASADENA, Appellant, v. PASADENA LAND AND WATER COMPANY, Respondent.

WATER CORPORATION — TRANSFER OF ENTIRE PROPERTY — LEGISLATIVE SANCTION ESSENTIAL.—A *quasi*-public corporation, engaged in supplying water for public use, cannot, without legislative sanction, transfer to another the entire property devoted to such service and the business of carrying it on.

ID.—CONSENT OF STOCKHOLDERS TO TRANSFER OF ENTIRE WATER SYSTEM.—Under section 361a of the Civil Code, as enacted in 1903, a *quasi*-public corporation, such as a water company, with the consent of the stockholders thereof holding of record at least two thirds of its issued capital stock, but not otherwise, may make a transfer of its business, franchises, and property as a whole, including its water-pipes in the streets of a municipality, and the right to use such streets, as a way, which it had under section 19 of Article XI of the constitution.

ID.—TRANSFER OF FRANCHISE — RELEASE OF LIABILITIES.—Section 10 of Article XII of the Constitution, providing that the Legislature shall not pass any laws permitting "the leasing or alienation of any franchise, so as to release the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise, or any of its privileges," does not prohibit such a transfer by a water company, but

merely forbids a transfer of a franchise "so as to relieve the franchise or property held thereunder," from liabilities so incurred or contracted. The transferee would take the franchise and property pertaining to it subject to all its burdens, and, so long as it held it, would be obliged to continue the performance of the public service to which it had been dedicated, or to allow others to do so in its behalf.

Id.—Public Use—Dedication of Water to—Right to Continuance of Use—Mandamus.—In the case of the establishment of a water system to supply water for public use, all the persons to whose use the water is appropriated or dedicated are vested with a right to have the supply continued by whomsoever may be in control thereof, and may enforce such right by a proceeding in *mandamus* against the person in control of the supply and the works by which it is distributed, regardless of the title, to compel the continuance of the distribution, in the usual and proper manner, to those entitled. This rule is applicable, and the remedy by *mandamus* available, whether the person in control of the supply is a municipal or a private corporation, or an individual.

Id.—Power of Transferee to Accept.—A transfer of property used in a public service, from one corporation to another, although made by a corporation having power to convey, is invalid unless the transferee has the power to accept the property and continue the use to which it has been devoted. If such power is wanting in the transferee, the transfer is not binding on the grantor or lessor.

Id.—City of Pasadena—Right to Acquire Water System—Supply of Water to Another City.—The city of Pasadena, under the provisions of its charter, (Stats. 1905, p. 1021), and under the act of 1891 (Stats. 1891, p. 102), has the power to accept the transfer of the property, business, and franchises of a water company, engaged in supplying water to certain parts of the cities of Pasadena and South Pasadena, for the use of the respective inhabitants thereof within said territories, and to ·the said cities, respectively, for sprinkling of streets, and to undertake and perform the public service imposed on such property in the hands of its transferer.

Id.—Supply to Outside Limits—Incidental Powers.—A grant of power to provide and supply water to a city and its inhabitants, authorizes a city to carry on a system and supply water to persons outside its limits, whenever it becomes necessary or convenient to do so in order to accomplish the main purpose of supplying water to those within.

Id.—Judicial Notice of Aridity of Region.—In construing what powers are necessary, incidental, or fairly to be implied from the powers expressly given to the city of Pasadena by its charter, respecting the acquisition of a water system, it is proper to consider the conditions surrounding the city at the time, and the court will take judicial notice that the two cities are situated in a comparatively arid region, the available waters of which are already applied to valuable public or private use.

ID.—FIXING WATER RATES BY ONE CITY AS AGAINST ANOTHER.—Under the constitution, a municipal corporation has power to fix the rates to be charged for water supplied to its inhabitants and to control the manner of laying and repairing pipes in its streets for that purpose, as against another city engaged in supplying such waters, as well as when an individual or water corporation does so.

ID.—PERFORMANCE OF GOVERNMENTAL FUNCTIONS.—In the carrying on of the water service to the people of South Pasadena, the city of Pasadena will not be acting in its political, public, or governmental capacity as an agent of the sovereign power, equal in all respects to the city within which it operates. In administering a public utility, such as a water system, even within its own limits, a city does not act in its governmental capacity, but in a proprietary and only *quasi*-public capacity.

ID.—SUPPLYING WATER OUTSIDE OF CITY A MUNICIPAL AFFAIR—CHARTER PROVISIONS CONTROL.—The supplying of water by the city of Pasadena to outside territory, being necessarily a matter incidental to the main purpose of supplying water to its own inhabitants, is a "municipal affair" of the city of Pasadena, within the meaning of that phrase in section 6 of article XI of the constitution, and the charter provisions relating thereto prevail over general laws, if inconsistent therewith.

ID.—SALE OF SURPLUS WATER—WATER ALREADY DEDICATED TO A PARTICULAR USE.—Upon the purchase by the city of Pasadena of the property, business, and franchises of a water company, a portion of whose water was appropriated to the use of a part of the city of South Pasadena and its inhabitants, the duty devolves upon it, as a trustee, of continuing to supply such water to the part of the city of South Pasadena and its inhabitants that previously enjoyed the use. As to such water, it cannot be considered as surplus water subject to sale to others, within the meaning of the Act of March 27, 1897, authorizing a city having in the supply more water than is necessary for its inhabitants, to sell the surplus, but providing that contracts for such sales shall not run for a period longer than one year.

ID.—LAYING MAINS IN STREETS OF ANOTHER CITY.—Section 19 of article XI of the constitution, providing that in any city where there are no municipal waterworks for the supply of its inhabitants, "any individual, or any corporation duly incorporated for such purpose," may lay mains in the streets for supplying such water, should be liberally construed, so as to empower a municipal corporation on whom the duty devolves of supplying water to another municipality, to lay its mains in the streets of the latter.

ID.—INJUNCTION — THREAT TO DISCONTINUE SUPPLY — ADEQUACY OF LEGAL REMEDY BY MANDAMUS.—An injunction will not lie to restrain a municipal corporation from acquiring a water system, a part of which is already appropriated to supplying water to another city, upon a mere allegation that it threatens and intends, when it

acquires such system, to cut off the supply from the other city and its inhabitants. Should it attempt such unlawful act, the persons injured would have an adequate legal remedy by mandamus.

APPEAL from a judgment of the Superior Court of Los Angeles County. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

John E. Carson, and Lynn Helm, for Appellant.

Anderson & Anderson, for Respondent.

SHAW, J.—The defendant is a corporation engaged in supplying water to certain parts of the cities of Pasadena and South Pasadena, respectively, for the use of the respective inhabitants thereof within said territories, and to the said cities, respectively, for sprinkling of streets. The territory thus supplied within South Pasadena embraces from one half to two thirds of its area. This suit is to enjoin the defendant from selling and transferring to the city of Pasadena its water, water-rights, water plant or system and all franchises and property of any and every description heretofore used by the defendant in so supplying said water to the plaintiff and its inhabitants, as aforesaid. It appears that the defendant is about to make such transfer, so far as it has the lawful power to do so. A general demurrer to the complaint was sustained and thereupon judgment was given for the defendant, from which the plaintiff appeals. The record further shows that an answer was filed with the demurrer, that plaintiff demurred to the answer and moved to strike out certain parts thereof, and that this demurrer was overruled and the motion denied. As we have concluded that the demurrer to the complaint was properly sustained, the other orders are immaterial to the disposition of the appeal.

It is proper to say here that two other cases, namely: *Graham* v. *Pasadena Land and Water Company*, L. A. No. 1957, *post*, p. 596, [93 Pac. 498], and *Orcutt* v. *Pasadena Land and Water Company and the City of Pasadena*, L. A. No. 1958, *post*, p. 599, [93 Pac. 497], the latter begun by residents of South Pasadena, entitled to water from the defendant water company, and the former by a stockholder of

the defendant herein, to obtain similar relief, were submitted with this case and that, as requested by counsel, the briefs in those cases have been considered in this case, so far as applicable.

The appellant presents for our determination four questions:

First—Has the Pasadena Land and Water Company, while it continues to exist as a going corporation and without the assent of the state, power or authority to transfer its entire property, privileges, and franchises and thereby discharge itself of the duty and deprive itself of the ability to continue the public service of supplying water to the plaintiff and its people?

Second—Has the state consented to such transfer?

Third—Has the city of Pasadena, to which the transfer is to be made, power to accept said property, privileges, and franchises and to perform the duties to the plaintiff and its people hitherto imposed upon and performed by the Pasadena Land and Water Company, and which constitute a charge upon the property to be transferred?

Fourth—If such power is possessed by the respective corporations, as aforesaid, can the subsequent performance of such duties by the city of Pasadena be enforced by the city of South Pasadena and its inhabitants entitled to the water, or only by the grantor, the Pasadena Land and Water Company?

The first, second, and fourth of these propositions will be considered together.

1. The respondent is a *quasi*-public corporation, engaged in supplying water for public use.  This is admitted, and it is also conceded that corporations of that character cannot, without legislative sanction, transfer to another the entire property devoted to such service and the business of carrying it on. This appears to be settled by the authorities.  (*Visalia Gas etc. Co.* v. *Sims,* 104 Cal. 326, [43 Am. St. Rep. 105, 37 Pac. 1042] ; *Thomas* v. *Railroad Co.,* 101 U. S. 82; *Central T. Co.* v. *Pullman P. P. Co.,* 139 U. S. 48, [11 Sup. Ct. 478] ; *Oregon Ry. Co.* v. *Oregonian Ry. Co.,* 130 U. S. 1, [9 Sup. Ct. 409] ; *York etc. Ry. Co.* v. *Winans,* 17 How (U. S.) 30; *Green Bay etc. Co.* v. *Union S. B. Co.,* 107 U. S. 98, [2 Sup. Ct. 221] ; *Cumberland T. and T. Co.* v. *Evansville,* 127 Fed. 187; Morawetz on Cor-

porations, secs. 565, 1114, 1115, 1129; 1 Clark & Marshall on Corporations, sec. 162.)

In 1903 the legislature enacted section 361a of the Civil Code, which reads as follows:

"No sale, lease, assignment, transfer or conveyance of the business, franchise and property, as a whole, of any corporation now existing, or hereafter to be formed in this state, shall be valid without the consent of stockholders thereof, holding of record at least two thirds of the issued capital stock of such corporation; such consent to be either expressed in writing, executed and acknowledged by such stockholders, and attached to such sale, lease, assignment, transfer, or conveyance, or by vote at a stockholders' meeting of such corporation, called for that purpose, but with such assent, so expressed, such sale, lease, assignment, transfer or conveyance shall be valid; *provided, however,* that nothing herein contained shall be construed to limit the power of the directors of such corporation to make sales, leases, assignments, transfers or conveyances of corporate property other than those hereinabove set forth."

This enactment is not, on its face, a mere negative or prohibitive statute, forbidding that which before was permitted. It is both affirmative and negative in its terms. Its affirmative provisions may be paraphrased thus: "With the consent of the stockholders thereof, holding of record at least two thirds of its issued capital stock, (expressed in the prescribed manner), any corporation in this state may make a valid sale, lease, assignment, transfer or conveyance of its business, franchises and property, as a whole." It expresses a consent to such transfer in the manner prescribed, as well as a prohibition against such transfer in any other mode.

In the absence of legislative restrictions, it is the law in this state that an ordinary commercial corporation, not doing a public service business, can alienate its entire property whenever it is necessary or proper to do so for the best interests of its stockholders and creditors. (*Miner's Ditch Co.* v. *Zellerbach,* 37 Cal. 543, 588-592, [99 Am. Dec. 300].) And it would seem that the stockholders and creditors, alone, would have the right to object to such a transfer by a corporation of that character (*Oakland R. R.* v. *Oakland etc. R. R. Co.,* 45 Cal. 379, [13 Am. Rep. 181]; *Illinois Bank* v.

*Pacific Railway Co.,* 117 Cal. 332, [49 Pac. 197]), though we presume the state could maintain an action to forfeit the corporate franchise for nonuser or misuser. In the case first cited, the Miner's Ditch Company, which had transferred its entire property, was, in fact, a water company selling water upon the market to miners for their use. But this was before the constitution of 1879 had declared the use of water for sale, rental, or distribution, to be a public use. The opinion distinctly declares it to be a matter of private concern only, and the decision is expressly based on that fact, distinguishing that class of corporations from *quasi*-public corporations. The effect of this statute is, therefore, twofold. It deprives ordinary private business corporations of the power they previously possessed to dispose of their entire property, franchises, and business, as a whole, at the will of a mere majority of the stockholders, or of less than two thirds of them, and it confers upon *quasi*-public corporations the power to make such dispositions with the consent of two thirds of the stockholders expressed in the mode fixed, a power which such corporations did not have before. The words of the section expressly apply to "any corporation" then existing or thereafter to be formed. It constitutes a part of the code devoted to general provisions concerning all corporations, except those of a public nature, such as cities, counties, school districts and the like. There is nothing in the context of the code which requires, or would justify, an interpretation limiting its meaning so as to exclude *quasi*-public corporations. The words are express, positive, not at all ambiguous in this particular and the intent is clear; there is no occasion for resorting to implication to give them an effect not expressly declared, nor for applying the rules restricting the meaning of ambiguous statutes affecting public interests.

It is suggested that, if taken literally, it would give power to transfer the corporate franchise, the right to be a corporation and do business in that capacity. We do not perceive that this is important in this case, even if it were true, for it is not alleged that the defendant is attempting to transfer any franchise of that character. The legislature doubtless had in mind the fact that there are many *quasi*-public corporations doing business in the state and possessing rights and privileges, properly termed "franchises," which they had

acquired and possessed after they became incorporated, and which they had devoted to the public service in which they were engaged and which, therefore, could not be disposed of without legislative assent, and the word franchise was aptly used to describe this class of property and leaves no doubt as to what was intended. The transfer of all its property would not work a dissolution of the corporation, nor operate as a transfer of the corporate franchise. (*Miner's Ditch Co.* v. *Zellerbach,* 37 Cal. 590, [99 Am. Dec. 300].)

The defendant company had laid its water pipes in the streets of the cities of Pasadena and South Pasadena, was using those streets as a way through which to transmit water to the users, and had the right to make this use of the streets under the provisions of section 19, of article XI, of the constitution. This right, when made available by actual possession and use, is a species of real property, appropriately designated as a franchise. (*Stockton etc. Co.* v. *San Joaquin Co.,* 148 Cal. 313, [83 Pac. 54].) The appellant argues that this right, or franchise, is not in its nature, transmissible, or alienable, unless the precise mode of transfer is fixed by statute and a means provided for the enforcement of the use against the transferee, and that section 361a is inadequate in these respects. In this connection counsel cite section 10 of article XII of the constitution, which is as follows:

"The legislature shall not pass any laws permitting the leasing or alienation of any franchise, so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise, or any of its privileges."

It is urged that the effect of a transfer, such as that here proposed, would relieve the defendant corporation of its duty to continue the service of supplying water, which is imposed upon it by reason of its control of the water and its enjoyment of the constitutional franchise to use the streets for its pipe-lines, and that there would be no corresponding transfer of the duty to the transferee of the property, the city of Pasadena, nor any means of enforcing from said city the performance of that duty. The section does not forbid the transfer of a franchise so as to relieve the previous owner thereof, or the grantee or lessee, personally, from liability in-

curred in the operation of the franchise, if such a thing were possible. It merely forbids the transfer of a franchise "so as to relieve the *franchise, or property held thereunder,*" from liabilities so incurred or contracted. The code section (361a) authorizes a transfer of such franchise, or of all the interest the possessor may have in it, but it does not purport to relieve the franchise itself, or any property held under it or for its operation, from any liability or charge imposed, or to be imposed, upon it. If the proposed transfer provided that the property and franchise should be free from any such liability existing against it, or thereafter to arise from its possession and use, or attempted to transfer it so as to free it therefrom in the hands of the transferee, the transaction would be, to that extent, void, and the transferee would take the franchise and property pertaining to it subject to all the burdens of this nature, and, so long as it held it, would be obliged to continue the performance of the public service to which the property and franchise had been dedicated, or to allow others to do so in its behalf. (*Fellows* v. *Los Angeles,* 151 Cal. 52, [90 Pac. 141].) This is the purpose and effect of the constitutional provision above given. The transfer will have the effect of divesting the defendant company of the property, and as, according to the admitted allegations, there is no other water supply available, it will then have neither the means nor the ability to continue the performance of the public duty of supplying water for public use. It could not directly abnegate this personal duty without the consent of the proper public authority, and, of course, it could not do it indirectly by the device of transferring to another the only means whereby the duty could be performed. The effect of the statute (sec. 361a) is to give this consent, in pursuance whereof the public agent in charge of the use and property will be changed, and the effect of the constitutional provision is that the new agent must continue to devote the property to the same use as before. There does not appear to be anything unlawful, unconstitutional, or improper in a change so made.

The contention that no remedy exists to compel performance by the successor in interest, is without force. In case of the establishment of a water system of this character, all the persons to whose use the water is appropriated or dedicated are

vested with a right to have the supply continued by whomsoever may be in control thereof. (Const., art. XIV, sec. 1; Civ. Code, secs. 549-552; *Crow* v. *San Joaquin etc. Co.,* 130 Cal. 309, [62 Pac. 562, 1058]; *McCrary* v. *Beaudry,* 67 Cal. 120, [7 Pac. 264]; *Price* v. *Riverside etc. Co.,* 56 Cal. 432.) If the water is supplied for use upon land for its benefit, as for irrigation, the right to receive and use it becomes in the nature of an appurtenance to the land. If it is supplied for personal use to all persons within a certain territory or to all of a certain class within the territory, the right to its use is personal to the inhabitants of the territory, or to the members of the class, as the case may be, so long as they remain such. In either case the right may be enforced against the person in control of the supply and the works by which it is distributed, regardless of the title, by means of an action in *mandamus* to compel the continuance of the distribution, in the usual and proper manner, to those entitled. (*Price* v. *Riverside etc. Co.,* 56 Cal. 434; *Merrill* v. *South Side Irr. Co.,* 112 Cal. 426, [44 Pac. 720]; *Fellows* v. *Los Angeles,* 151 Cal. 52, [90 Pac. 141].)

Our conclusion is that all of the objections to the validity of section 361a, and all of the reasons advanced for giving it a meaning different from its literal import, are untenable and that it gives authority to the defendant to make the transfer of its business, franchises, and property, as a whole, in the manner prescribed and as here proposed. It is admitted that the statutory manner of making the transfer has been and will be followed.

2. It is settled law that a transfer of property used in a public service, from one corporation to another, although made by a corporation having power to convey, is invalid unless the transferee has the power to accept the property and continue the use to which it has been devoted. If such power is wanting in the transferee, the transfer is not binding on the grantor or lessor. (*Central Transportation Co.* v. *Pullman P. P. Co.,* 139 U. S. 48, [11 Sup. Ct. 478]; *Thomas* v. *Railroad Co.,* 101 U. S. 82; *Oregon Ry. Co.* v. *Oregonian Ry. Co.,* 130 U. S. 1, [9 Sup. Ct. 409]; *Pennsylvania R. R. Co.* v. *St. Louis R. R. Co.,* 118 U. S. 307, [6 Sup. Ct. 1094].) For the purposes of the case we may concede that the plaintiff, or any private party, has sufficient interest to raise this question.

We are of the opinion that the city of Pasadena has the power to accept the transfer in question and to undertake and perform the public service of supplying the water to the cities of Pasadena and South Pasadena and the respective inhabitants thereof, as it has been heretofore supplied, which is the duty attached to the property and imposed upon the possessor thereof.

The statute of 1891 on this subject is broad and comprehensive. It is as follows:

"Any incorporated city in this state may acquire by gift, purchase, or condemnation proceeding under the power of eminent domain, water, water rights, reservoir sites, rights of way for pipes, aqueducts, flumes, or other conduits, and all other property and appliances suitable and proper for supplying such city and its inhabitants with water." (Stats. 1891, p. 102.)

The special charter of the city of Pasadena gives the city power, "To construct and maintain waterworks, pipes, pipelines, acqueducts and hydrants for supplying the city and its inhabitants with water, *and the right to supply water to persons who live without the city* limits." (Subd. 8, sec. 3, art. I, Stats. 1905, p. 1021.)

It further provides for a board of water commissioners of five members, which board is given "control and management of all water and waterworks that now belong, or may hereafter be acquired by the city," and for a "water fund" which may be applied to the "purchase of necessary lands, water-rights and other property" for the improvement of the water system. (Stats. 1905, p. 1019, subd. 2, sec. 6, art. 6½.) Subdivision 4 of section 3 of article 1, gives the city power "to purchase, receive, have, take, hold, lease, use and enjoy property of every kind and description, *both within and without the limits of said city* and control and dispose of the same for the common benefit." By subdivision 16 of the same section power is given to create a bonded debt, equal to fifteen per cent of the assessed value of the property, to pay the cost of public utilities, and under subdivision 23 it may exercise the right of eminent domain to acquire "water, water-rights and waterworks, *within or without the corporate limits,* necessary or convenient for the use of said city and its inhabitants." (Stats. 1901, pp. 888, 890.)

These provisions are ample to confer power to acquire and carry on a water system outside the city so far as it may be necessary or convenient to do so in order to accomplish the main purpose of furnishing water to the city and its inhabitants. Indeed, it is so seldom that a water supply can be obtained within the limits of a city, especially in this state, that a mere grant of power to provide and supply water to the city and its inhabitants would be construed to give power to acquire for that purpose water supplies without the city. The powers of a municipal corporation include not only those expressly named in the grant, but also "the authority to do such subsidiary acts as are incidental and necessary to the exercise of" the powers specifically described. (*Von Schmidt* v. *Widber,* 105 Cal. 157, [38 Pac. 682].) Or, as stated by Mr. Dillon, they include "those necessarily or fairly implied in or incident to the powers expressly granted." (1 Dillon on Municipal Corporations, 4th ed., sec. 89; *Hammond* v. *San Leandro,* 135 Cal. 452, [67 Pac. 692.].) Under powers much less comprehensive in terms it has been held that a municipal or public corporation may carry on a system and supply water to persons outside its limits, whenever it becomes necessary or convenient to do so in order to accomplish the main purpose of supplying waters to those within. In *Fellows* v. *Los Angeles,* in considering a provision merely giving that city power to acquire water and water-rights within or without the city for the use of its inhabitants, it is said: "In the exercise of this power, it would have the right to buy from any corporation or person, engaged in supplying water for public use outside the city, any surplus water which such person might possess. If it were necessary, in order to obtain such surplus, the city might, under this power, purchase the entire water supply of such person or corporation and the water plant or system used in connection with it, so that, after operating the system and supplying the persons entitled to use the water, it could devote the surplus to the use of the inhabitants of the city." In *Hewitt* v. *San Jacinto Irr. Dist.,* 124 Cal. 192, [56 Pac. 893], it was held that an irrigation district, under its general power to acquire and hold such water, water-rights and other property as should be necessary to supply water to irrigate the lands within the district, had power to purchase and hold water already in part used on

lands outside the district, to take it subject to such use and
to continue to furnish the water to such outside lands as it
had been furnished before.

These authorities would seem sufficient to settle the ques-
tion in favor of the respondent. The ingenuity of counsel
for appellant has, however, suggested many objections to the
rule stated and difficulties which he fears may arise in its
application, and, in view of the importance of the question,
we deem it proper to discuss them at more length.

In considering what powers are necessary, incidental, or
fairly to be implied from the powers expressly given to the
city of Pasadena by the foregoing provisions, it is proper to
look to the conditions surrounding the city at the time. The
court will take judicial notice that the two cities interested
are situated in a comparatively arid region where there is
little, if any, water not already applied to some extremely
valuable public or private use, and that water sources in that
vicinity are in great demand and command a high price
where they can be purchased at all. It appears from the
complaint that for many years the defendant company has
been supplying water to portions of the two cities, precisely
as it does now, the area supplied in South Pasadena being
about two thirds of its territory, that more than three hundred
families are now supplied therein from this source and that
if they are now deprived thereof there is no other known
source from which it can be replaced and they would be
without water for any purpose. It may well be assumed that
Pasadena could obtain no sufficient quantity of water for a
municipal water system, except by buying or condemning that
portion of the water of the defendant company now distributed
to its inhabitants, or some other supply already devoted to use
outside the city. It would be bad public policy under these
conditions to require a city desiring to obtain water for its
inhabitants, to take water in use by others for similar pur-
poses outside its limits, where the effect would be to devastate
and depopulate such outside territory. To condemn the in-
dividual right of each member of the outside community
would be impracticable, and even if it could legally be done it
would probably prove too costly for the resources of the city.
To separate the supply and endeavor to control, manage, and
if necessary, develop and increase the supply from time to

time, in concert or partnership with some other corporation, would probably cause many complications and render the successful administration of the municipal system much more difficult and doubtful. In order to accomplish the purpose for which these powers were given, it is reasonably certain that it would be advisable, and it might be necessary, for the city to take over a supply already partly in use outside and continue the service to the outside territory while supplying the remainder to the use of its own people. These probabilities and the conditions we have stated must have been well known to the framers of the charter, to the people of Pasadena, and to the legislature, when the charter was prepared, adopted, and ratified. In view of all the circumstances, we may reasonably believe that the clause adopted in 1905, giving the "right to supply water to persons who live without the city limits," was intended to authorize a plan such as that here under consideration. If not designed to authorize some similar plan it might as well never have been enacted at all.

Under the constitution South Pasadena has power to fix the rates to be charged for water supplied to its inhabitants and to control the manner of laying and repairing pipes in its streets for that purpose. Necessarily it has this power as against another city engaged in supplying such water, as well as when an individual or water corporation does so. It is suggested that the two cities each represent the sovereign power and would have equal authority in all municipal affairs, that a conflict would ensue, and that such consequences cannot be considered as intended, unless the intention is expressly and unmistakably declared. In this connection the rule is invoked that there cannot be two municipalities exercising the same powers at the same time within the same territory. But the two cities would not be of equal authority with respect to the use of water in South Pasadena, in such a case. South Pasadena would have the power above stated, under the constitution, and Pasadena, so far as that service is concerned, would be subject to those powers, to the same extent as the Pasadena Land and Water Company is now subject thereto. In the carrying on of the water service to the people of South Pasadena the city of Pasadena will not be acting in its political, public, or governmental capacity as an agent of the sovereign power equal in all respects to the city within which it

operates.   In administering a public utility, such as a water system, even within its own limits, a city does not act in its governmental capacity, but in a proprietary and only *quasi-*public capacity.   (*Davoust* v. *Alameda,* 149 Cal. 70, [84 Pac. 760] ; *Illinois etc. Bank* v. *Arkansas City,* 76 Fed. 271, [22 C. C. A. 171] ; *Esberg Cigar Co.* v. *Portland,* 34 Or. 282, [75 Am. St. Rep. 651, 55 Pac. 961].)   Having taken over the whole system subject to the burden of supplying a part of the water to inhabitants of South Pasadena, the city of Pasadena will have no greater rights or powers, respecting that part of the service, than its grantor previously had.   It will be under the same obligation as its grantor to continue the service and supply the water to all persons who may become entitled to it in the future, so long as it retains possession and control of the property so charged.   (*Fellows* v. *Los Angeles,* 151 Cal. 52, [90 Pac. 141].)   The powers of the two cities in regard to this water service will be separate and distinct, one will be subordinate to the other, and, hence, there will not be two cities exercising the same powers in the same territory at the same time; South Pasadena, within its own limits, will be the sole representative of sovereignty in the fixing of rates, and in the supervision of the streets; and Pasadena will be subject thereto, as a private person.   If, by fixing too low rates, South Pasadena should attempt to compel the service to be made at a loss, Pasadena would have the same remedies, and no greater, in the courts that a *quasi-*public corporation or natural person would have in the same circumstances.   The fact that the outside service is within another city does not appear to be a significant factor in the question of the power.   If it were in a rural community, the rates charged would be subject to judicial control to make them reasonable.   Being in another city, the serving city has a right to demand reasonable rates and may enforce them if not granted.   The limitations would not affect the power in one case more than in the other.

The act of March 27, 1897 (Stats. 1897, p. 182), authorizes a city, having in its supply more water than is necessary for its inhabitants, to sell the surplus, but provides that contracts for such sales shall not run for a period longer than one year. It is contended that the service of water to outside communities is not a "municipal affair" within the meaning of that

phrase in section 6, article XI, of the constitution, that it is therefore subject to general laws, and that under the above-mentioned statute the city cannot undertake, as it proposes to do, to render a perpetual water service to the inhabitants of outside territory, which it is claimed, will be equivalent to a contract to sell to them its surplus water for a period longer than one year. There are two answers to this contention. The supplying of water to outside territory, being necessarily a matter incidental to the main purpose of supplying water to its own inhabitants, is as much a municipal affair of Pasadena, as is the main purpose, which is conceded to be such, and therefore the charter provisions relating thereto prevail over general laws, if inconsistent therewith. In truth, however, the city will not be selling its surplus in the sense intended by the statute. The right to the use of the required quantity of this water is now vested in the city of South Pasadena and its inhabitants within the portion of its territory where it is to be served, and the city of Pasadena does not propose to take away this right. It is about to buy only the right of the Pasadena Land and Water Company to the water, which did not include the use. It will be obliged to put it to the same use as fully as that company is now compelled to do. Water which is in this manner dedicated to the use of an outside community cannot be at the same time surplus water subject to sale to others. The sale is already, in effect, accomplished. The city of Pasadena, with respect to this part of the water, will hold title as a mere trustee, bound to apply it to the use of those beneficially interested.

Section 19, of article XI, of the constitution, provides that in any city where there are no municipal waterworks for the supply of its inhabitants "any individual, or any corporation duly incorporated for such purpose," may lay mains in the streets for supplying such water. This grant clearly does not, in terms, extend to a municipal corporation. It is contended that it, in effect, forbids the exercise of such privilege by another city. The provision is intended to further the interest of the public and facilitate the supply of water to the inhabitants of the city, and it should be liberally construed to effect that purpose. When the state gives such power to a city that, as an incident to supplying water to its own people, it may furnish water to the inhabitants of another

city to whose use a part of the water is dedicated, the city having such incidental powers should be considered as a "corporation duly incorporated for such purpose." A city is duly incorporated for all purposes to which its powers extend. There is nothing incongruous, or particularly unusual in such an arrangement. In other states similar powers have been upheld. (*Mayo* v. *Dover etc. Co.,* 96 Me. 539, [53 Atl. 62]; *Cooper* v. *City of Brooklyn,* 42 N. Y. Supp. 762, [11 App. Div. 71]; *Town of West Hartford* v. *Hartford W. Com.,* 68 Conn. 323, [36 Atl. 786]; *People* v. *Briggs,* 50 N. Y. 553; *Pittsburgh* v. *Brace,* 158 Pa. St. 174, [27 Atl. 854].)

It is alleged that the city of Pasadena threatens and intends, when it has acquired the water system of the defendant corporation, to cut off the supply of water to South Pasadena and its inhabitants, that it is acquiring the water for its own inhabitants whose needs will be so great that the entire water supply will be required therefor, that, in order to carry out its purpose, it will be compelled to refuse to continue supplying water to outside persons, and that it will deprive the plaintiff and its inhabitants of water unless the proposed sale is enjoined. It sufficiently appears from what has been said that, if the other allegations of the complaint are true, this could not lawfully be done. We have shown that if it is attempted the persons injured will have a remedy by a suit in *mandamus.* There will therefore be an adequate remedy at law, and a suit in equity to enjoin the threatened transfer cannot be maintained.

The court below properly held that the complaint did not state facts sufficient to constitute a cause of action.

The judgment is affirmed.

Angellotti, J., McFarland, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.