[L. A. No. 14568. In Bank.—June 14, 1934.]

OLIVER S. PEACOCK, Petitioner, v. H. A. PAYNE, as County Auditor, etc., Respondent.

O'Melveny, Tuller & Myers and James L. Beebe for Petitioner.

Everett W. Mattoon, County Counsel, and Roy W. Dowds, Flood Control Counsel, for Respondent.

SHENK, J.—This is an original proceeding in *mandamus* to compel the respondent County Auditor, as *ex-officio* Auditor of Los Angeles County Flood Control District, to approve the petitioner's claim for[6] services rendered in appraising certain lands along the San Gabriel River below a point known as Whittier Narrows. The appraisal of the land was ordered by the board of supervisors, and the claim was approved by the board and ordered paid. The Auditor refused to approve the claim on the ground that the claim would be paid, if at all, from the proceeds of certain bonds issued for flood control purposes and that such expenditure from the bond fund would be unauthorized. As a return to the alternative writ the respondent filed a general demurrer to the petition.

The basis for the Auditor's objection is that the portions of the bond funds here sought to be charged with said expenditure were voted for the control and conservation of

waters flowing through the San Gabriel Canyon; whereas the lands proposed to be acquired for conservation purposes below the narrows would not only control and conserve waters from that canyon, but would also control and conserve waters which flow into the San Gabriel River above the narrows from tributaries below the mouth of said canyon. The waters arising in the San Gabriel Canyon which would be controlled and conserved by the proposed plan are approximately from 61 to 67 per cent of all of the waters in the San Gabriel River at the narrows. The tributaries referred to furnish the remaining 33 to 39 per cent of said waters.

The Los Angeles County Flood Control District was organized and is functioning pursuant to a special act of the legislature in 1915 (Stats. 1915, p. 1502), following the disastrous floods in Los Angeles County in 1914. The original plan contemplated the construction of a high dam in San Gabriel Canyon. After this work had progressed to a certain point the plan was changed. One sufficient reason for the change was the refusal of the state department of public works to approve the plan for the high dam as originally proposed, pursuant to the authority vested in that department under the act of 1929 (Stats. 1929, p. 1050). Whether the expenditure of the bond funds could be made in accordance with that change of plans was tested and approved in *Los Angeles County Flood Control Dist.* v. *Wright,* 213 Cal. 335 [2 Pac. (2d) 168], the decision in which is hereby referred to for a history up to that time of the flood control project as especially relating to the San Gabriel River canyon feature of the enterprise.

According to the original report of the flood control engineer in 1924, pursuant to which the bonds were voted, it appeared that more than one-half of the precipitation and runoff of the waters originating in Los Angeles County occur in the San Gabriel Mountain area. The principal stream leaving this area is the San Gabriel River. This river runs in a single channel for a distance of about seven miles below the mouth of the canyon. It then divides into two branches, one known as the Rio Hondo and the other as the San Gabriel River. For some miles these two branches of the San Gabriel are approximately five miles apart, but in

Puenta hills, about thirteen miles from the mouth of the canyon, there is a pass at which the two branches of the river are about a mile and a half apart. This pass is called the Whittier Narrows. Below the narrows the distance between the two branches widens gradually and the streams reach the Pacific Ocean through separate channels.

The San Gabriel Basin, so called, includes the mountain drainage area in which the river rises, the San Gabriel Valley above Whittier Narrows and the coastal plain below the narrows. The large volume of water originating in the San Gabriel watershed which percolates through the gravel beds of the San Gabriel Basin supplies the San Gabriel Valley and most of the coastal plain with water for irrigation and domestic uses. In the coastal plain area there are a number of important cities, towns and other communities which depend upon this underground water for their source of supply, including Long Beach, Whittier, Artesia, Norwalk, Signal Hill, Montebello, Seal Beach and other areas extending as far west as the city of Torrance and easterly somewhat beyond the city of Whittier. A constantly increasing city and rural population and a more intensive use of agricultural lands of this area have made heavy drains upon this underground water supply. The level of the underground waters has gone steadily downward. In the coastal plain area there has been a substantial encroachment of salt waters due to the rescission of the underground waters. Engineers familiar with the subject have repeatedly recommended that more of the San Gabriel waters must be put underground and conserved if the water supply of that important coastal basin area is to be maintained.

Since the originally planned high dam was abandoned the proposed plan for the control and conservation of the San Gabriel waters has been changed in some respects three times. One of the purposes contemplated by the modified plan approved in *Los Angeles County Flood Control Dist.* v. *Wright, supra,* was the construction of works for spreading grounds below the mouth of the canyon. The change in the plan now proposed is to provide additional and extensive spreading ground farther down and in the San Gabriel River basin.

By appropriate resolution the board of supervisors of the district found that the replenishment of the underground water supply in the coastal basin is a vital necessity; that additional engineering studies have disclosed that a portion of the waters of the San Gabriel Canyon which will be placed in the underground basin beneath the proposed spreading ground will rise to the surface at the Whittier Narrows and that unless lands are acquired and spreading grounds developed as now proposed, flood and storm waters from the San Gabriel Canyon will waste into the ocean. It was further found that the public necessity and welfare required the acquisition and development of the proposed spreading grounds in order to control and conserve the flood and storm waters of the Rio Hondo and San Gabriel River. The proposed change in plan was ordered and the acquisition of the necessary lands directed by appraisal and purchase or by condemnation.

The abandonment of the high dam project, which contemplated extensive impounding of water, necessarily resulted in the subsequent change to the alternative of providing lower dams and spreading grounds heretofore approved by this court. The additional change now proposed is but an extension of the prior spreading ground plan. This change is declared to be necessary because of excessive costs in the acquisition of certain of the lands included in the prior plan and also by the necessity for additional spreading grounds to aid in the successful conservation of waters, the accomplishment of which was one of the main purposes of the organization of the district and the voting of the bond issue.

It should require no extended argument to justify the conclusion that, so far as the control and conservation of the waters of the San Gabriel watershed are concerned, the change of plans to extend the area and location of spreading grounds is plainly within the power of the board to bring about under the facts disclosed. Section 15 of the Flood Control Act requires the district to expend the bond funds in conformity with the ''report, plans, specifications and map theretofore adopted as above specified unless the doing of any of such work described in the report . . . shall be rendered contrary to the best interests of said district by some change of conditions in relation thereto, in

which event said board of supervisors may . . . order necessary changes made in such proposed work or improvements, and may cause new plans and specifications to be made and adopted therefor''. Under section 21 the act and every part thereof is to be liberally construed to promote its objects and carry out its purposes. ■ The change in conditions necessary to justify a departure from the original plan does not mean that a change in the geological formation or in the facts actually existing at the outset must take place. If the facts and conditions assumed from engineering or other data then in hand are later shown to be incorrect or inadequate ''some change in conditions in relation to'' the project is then brought to light, and the modified plan is justified, so long as there is no departure from the general purpose of the improvement, viz., the control and conservation of the waters of the watershed. Here no such departure is contemplated, and hence no violation of the terms of the act or the so-called contract with the voters in the district.

■ It is insisted by the respondent that the portions of the bond funds voted in 1924 to control and conserve the flood waters of the San Gabriel Canyon may not be used to control or conserve flood waters from other areas. The contention is based on the statement that if the spreading grounds are acquired and improved as proposed, the waters of certain tributaries flowing into the San Gabriel River above Whittier Narrows and below the mouth of the San Gabriel Canyon will also be controlled and conserved and that this was not one of the purposes of the bond issue as voted. The fact is admitted, but the conclusion does not necessarily follow. The control and conservation of such tributary waters is but an incident necessarily appurtenant to the main purpose of the project applicable to the San Gabriel River area. These tributary waters reach the San Gabriel Basin by nature's processes. Their debouchment into the valley is not only physically unavoidable, but would appear to be highly beneficial to the purposes of the district from a conservation standpoint. What is necessarily incidental to the main purpose of the project is authorized to be done. (See *City of South Pasadena* v. *Pasadena Land*

*etc. Co.,* 152 Cal. 579 [93 Pac. 490]; *Uhl* v. *Badaracco,* 199 Cal. 270 [248 Pac. 917].)

No point is made that the proceedings leading up to the change of plan are in any respect irregular, nor that the board has abused its discretion in adopting the same. The appraisal of the land sought to be acquired is a necessary part thereof.

Let the peremptory writ issue as prayed.

Langdon, J., Waste, C. J., Curtis, J., and Seawell, J., concurred.